ROBERTS, J.,
for the Court:
¶ 1. In the Warren County Circuit Court, a jury convicted Glenn Westbrook of Count I, child molestation, and Count II, enticing a child to engage in sexual activity. He was sentenced to serve fifteen years in the custody of the Mississippi Department of Corrections (MDOC) for Count I. Westbrook was also sentenced to serve twenty years in the custody of the MDOC for Count II. The circuit court suspended three years of Westbrook’s sentence in Count I, leaving twelve years to serve, and also suspended five years of Westbrook’s sentence in Count II, leaving fifteen years to serve. His sentences were ordered to be served consecutively for a total of twenty-seven years in custody of the MDOC. Westbrook also received fines on both counts. Westbrook filed a motion for a judgment notwithstanding the verdict (JNOV) and a motion for a new trial. The circuit court overruled both motions, and Westbrook executed this appeal.
FACTS AND PROCEDURAL HISTORY
¶ 2. Westbrook was indicted on one count of molestation and one count of enticement of a child for sexual purposes. *611 On December 5, 2005, Westbrook pled guilty to one count of enticement of a child for sexual purposes in exchange for the molestation count to be dropped. After filing a motion for post-conviction relief, Westbrook’s guilty plea was later set aside due to a defect in the first indictment. Westbrook was re-indicted on the same charges on January 28, 2010. He entered a plea of not guilty, and a jury trial was held April 4-6, 2011.
¶ 3. The circuit court heard numerous pretrial motions on February 18, 2011. Among the pretrial motions filed, West-brook filed a motion in limine seeking the suppression of testimony offered by two of his nephews. Their testimony would be regarding allegations of prior sexual abuse inflicted upon them by Westbrook between thirty and forty years ago. The circuit court overruled this motion finding that, with sufficient limiting instructions after each nephew’s testimony and a limiting written jury instruction, the evidence was more probative than prejudicial under Mississippi Rule of Evidence 408.
¶ 4. At Westbrook’s trial, the State presented the testimony of several witnesses. John Smith, the victim, was the first to testify.[1] Smith testified that when he was around the age of twelve, he lived in the same apartment complex as Westbrook, and the two became friends. Westbrook would take Smith out to get meals, to go to the movies, and to buy him clothes. West-brook even opened a bank account for Smith. They also spent time together in both Westbrook’s and Smith’s apartments. Smith testified that while they were spending time together, Westbrook would rub his hands on Smith’s penis and bottom, but Westbrook never put his hands down Smith’s pants or underwear. Smith also testified that it made him uncomfortable when Westbrook would kiss him on the cheek. When Smith was fifteen years old, he moved to Arkansas to live with his father after his mother became concerned with his relationship with Westbrook. His parents instructed him not to have any contact with Westbrook. A letter was presented to Smith at trial, and according to him, he received the letter from West-brook. The letter included a poker chip and a prepaid calling card. According to Smith, the poker chip was a gift/souvenir from the many times they went to Ameris-tar Casino together. The calling card was supposed to be used only to call West-brook. The letter was addressed to “Buddy-Roo,” which Smith confirmed was a nickname given to him by Westbrook. It also stated that Westbrook was interested in coming to Arkansas to visit Smith and that he “would have no problem finding [Smith]” because he was a former police officer. The letter also stated: “I [am] sure we can find a way to meet somewhere. Maybe go for some pizza and then to my hotel to visit for a while.” Smith also testified that on several occasions he caught Westbrook masturbating in the bathroom right after Westbrook had been rubbing on Smith’s privates.
¶ 5. In addition to Smith’s testimony, Smith’s mother and their neighbor also testified that many of Westbrook’s actions toward Smith made them uncomfortable. To them, Westbrook’s behavior and actions, while making them wary, did not initially indicate molestation. As time went on, they became concerned something more inappropriate, such as molestation, was, in fact, going on between Smith and Westbrook. Some of these actions included: buying matching clothes, setting *612 up a bank account in Smith’s name, helping Smith skip school and taking him to the casino instead, telling Smith he loved him, and at least one instance of kissing Smith on the mouth as witnessed by the neighbor. The State also presented an audio recording of a phone call between Westbrook and an unidentified woman in which he expresses his anger and frustration that the phone card he sent Smith was used on phone calls to other people instead of phone calls to him. He again makes reference to being able to find Smith due to his past as a police officer.
¶ 6. Two of Westbrook’s nephews also provided testimony for the State. Over Westbrook’s objection, George Ettinger, Jr., and Wayne Westbrook both described in extremely vivid detail allegations of molestation they were subjected to as young children at the hands of Westbrook. Westbrook was never arrested or indicted on any of these allegations. After Ettinger’s and Wayne’s testimonies, the circuit judge admonished the jury with a limiting instruction not to use the testimony to infer that Westbrook acted in conformity with his previous acts; thus, making him guilty of the current crime. Instead, the jury was to consider the testimony “only for the limited purpose of showing motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, or accident.”
¶ 7. When the State rested its case-in-chief, Westbrook moved for a directed verdict arguing that the State failed to meet the elements of the crimes charged. The circuit judge denied the motion. West-brook then presented the testimony of Margaret Pagan, his roommate of over seventeen years. She testified that West-brook’s relationship with Smith was one of a father figure and that she had never seen any inappropriate interactions between Westbrook and Smith. Betty Brent, Beechwood Park Apartments manager, also testified on behalf of Westbrook. She testified that she personally had never witnessed any inappropriate contact between Westbrook and Smith and that she saw both of them on a regular basis. Lastly, Kenneth Neff, a resident of Beechwood Park, testified that he saw West-brook take more of a father figure role over Smith, and he had never personally observed Westbrook inappropriately touch Smith.
¶ 8. The jury found Westbrook guilty on Count I and Count II. A sentencing hearing was held on April 22, 2011. On Count I, Westbrook was sentenced to fifteen years in the custody of the MDOC with twelve years to serve, three years suspended, and three years of post-release supervision (PRS). He was also ordered to pay a $5,000 fine. On Count II, West-brook was sentenced to twenty years in the custody of the MDOC with fifteen years to serve, five years suspended, and five years of PRS. He was also ordered to pay a $50,000 fine. The sentences were ordered to run consecutively to one another. He received credit for time served in custody. Westbrook was also required to register as a sex offender and to have no contact with Smith or Smith’s family.
¶ 9. On April 13, 2011, Westbrook filed a JNOV motion and, in the alternative, a motion for a new trial. The circuit court overruled the motions on April 20, 2011. Based on the circuit court’s decision, West-brook executed the current appeal and raises the following two issues:
I. Whether the [circuit] court erred in finding sufficient evidence to support a guilty verdict [as] to the crime of enticement[.]
II. Whether the [circuit] court erred in admitting evidence of prior alleged incidents of rape and abuse pur *613 portedly committed by [Westbrook] on his nephews[.]
STANDARD OF REVIEW
¶ 10. In his first issue, West-brook argues that the circuit court erred in overruling his motions for a directed verdict and JNOV. Both motions are a challenge to the sufficiency of the evidence supporting his conviction of enticement of a child for sexual purposes. When reviewing the circuit court’s decision in overruling motions for a directed verdict and JNOV, “the critical inquiry is whether the evidence shows ‘beyond a reasonable doubt that accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction.” ’ Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005)(quoting Carr v. State, 208 So.2d 886, 889 (Miss.1968)). Further, this Court is to view “the evidence in the light most favorable to the prosecution” to determine if “any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Id. (citations omitted).
¶ 11. Westbrook’s second issue involves whether the circuit court erred in admitting testimony of prior sexual acts against children. The standard of review for the admission of evidence is the abuse-of-discretion standard, but “the circuit court must exercise its discretion within the boundaries of the Mississippi Rules of Evidence.” Smith v. State, 96 So.3d 33, 39 (¶ 20) (Miss.Ct.App.2012) (citing Shaw v. State, 938 So.2d 853, 857 (¶ 9) (Miss.Ct.App.2005)).
ANALYSIS
I. Sufficiency of the Evidence
¶ 12. Westbrook was indicted for a violation of Mississippi Code Annotated section 97-5-33(6) (Supp.2012), which provides: “No person shall, by any means ..., knowingly entice, induce, persuade, seduce, solicit, advise, coerce, or order a child to meet with the defendant or any other person for the purpose of engaging in sexually explicit conduct.” In his first issue, Westbrook argues that there was insufficient evidence to find him guilty of the crime of enticement of a child for sexual purposes because there was no evidence that he made a specific attempt to set a date, time, or place to meet Smith for sexual activity. According to Westbrook, simply alluding to a possible future meeting in a letter does not satisfy the elements of the crime.
¶ 13. We disagree with West-brook’s insistence that to prove child exploitation there must be a definitive or specific meeting place set. Section 97-5-33(6) does not require that an actual, confirmed meeting place be set or actually take place. Nor does the supreme court’s decision in Shaffer v. State, 72 So.3d 1070 (Miss.2011). Rather, the pertinent inquiry in this case is whether there was an attempt to exploit a child. As our supreme court explained in Shaffer, because “[solicitation is sufficient to violate” section 97-5-33(6), the statute is violated and the crime of exploitation is complete when one attempts to exploit a child. Shaffer, 72 So.3d at 1072 (¶¶ 4-5).
¶ 14. In the current case, the jury was instructed that it only should find Westbrook guilty if the State proved that he did “1. willfully, knowingly, unlawfully and feloniously; 2.[e]ntice, induce, persuade, seduce, solicit, advise, coerce, or order, or attempt the same; 3. [Smith], a child under the age of eighteen ... years; 4. to meet with [Westbrook], for the purpose of engaging in sexually explicit conduct.” Evidence was presented to the *614 jury that Westbrook sent Smith a letter indicating his desire to set up a meeting in Jacksonville for them to “maybe go for some pizza and then to [Westbrook’s] hotel to visit for a while.” A reasonable jury could have concluded that, while an overt request for sexual activity was not made, a request by a middle aged man to “visit” with an underage boy in a hotel room, against his parents’ wishes, satisfactorily met the elements of the crime charged. The questions of whether Westbrook intended to exploit the child and whether he aimed to meet to engage in sexually explicit conduct with Smith were “question[s] of fact to be gleaned by the jury.” Shanklin v. State, 290 So.2d 625, 627 (Miss.1974). In assessing Westbrook’s intent, the jury was free to consider his acts, expressions, and declarations. The jury was also privy to Mississippi Rule of Evidence 404(b) evidence from two of Westbrook’s previous molestation victims, which the circuit judge admitted as evidence of Westbrook’s underlying intent. Viewing the evidence in a light most favorable to the State, we do not find that the circuit judge erred in denying Westbrook’s JNOV motion challenging the sufficiency of the evidence to convict him of the crime of child exploitation.
¶ 15. This issue is without merit.
II. Admission of Evidence
¶ 16. Westbrook next takes issue with the admission of testimony of Ettinger and Wayne, his nephews, regarding sexual abuse he inflicted upon them. Prior to trial, Westbrook filed a motion in limine to exclude their testimony because the alleged sexual abuse was thirty to forty years prior to the current charge and that the alleged sexual abuse did not resemble the current charge. Westbrook further argued that the evidence did not survive the Mississippi Rule of Evidence 403 filter to be allowed in under Mississippi Rule of Evidence 404(b). The circuit court denied Westbrook’s motion in limine. Applying the Rule 403 filter, the circuit court found that the evidence was prejudicial, but when dealing with sexual crimes against children, there is more leeway in admitting this type of evidence. It also found that the probative value of the evidence substantially outweighed any unfair prejudice or confusion of the issues for the jury. The circuit court additionally found that a limiting instruction would further prevent any unfair prejudice or confusion on the part of the jury.
¶ 17. Westbrook makes an identical argument on appeal as to why the testimony of Ettinger and Wayne should have been excluded at trial. According to West-brook, the allegations of past sexual abuse are extremely remote in time. He also alleges that it is not enough for the crime to be similar, but “[t]here must be significant similarity in the method and manner that the crimes are committed, and not just a similar crime[.]” Westbrook claims the similarities were not present in this case. However, based upon Mississippi precedent, we do not find that the circuit court abused its discretion in allowing the testimony of Ettinger and Wayne although the allegations were remote in time and not identical to the current allegations.
¶ 18. In a similar case, Gore v. State, 37 So.3d 1178, 1187 (¶ 20) (Miss.2010), the Mississippi Supreme Court held that evidence of past allegations of sexual abuse, even though remote, is admissible to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. In Gore, John Gore was charged with gratifying his lust or indulging his depraved licentious sexual desires,” on May 11, 2007, by “ ‘intentionally handling], touch[ing] or rub[bing,] with his hands or any part of his *615 body or any member thereof,’ his twenty-one-month-old granddaughter[.]” Id. at 1180 (¶ 1). The State presented testimony from Gore’s adult daughter regarding his sexual molestation of her at the age of twelve, when he would make her sleep naked in the bed with him and touch her inappropriately. Id. at 1188-84 (¶ 14). In addition, Gore made his daughter sit on his lap while both were naked and look at child pornography. Id. at 1184 (¶ 14). Gore also required both his son and daughter to be naked at home and accompany him to a nudist camp. Id. The molestation of his granddaughter occurred approximately seven years after the sexual abuses of his own children. Id. at 1187 n. 17. The circuit court determined that the challenged testimony was permissible under Rule 404(b) and that the probative value of the evidence was not substantially outweighed by the prejudicial effect. Gore, 37 So.3d at 1187 (¶ 21). Also, the circuit court provided a limiting instruction to the jury that the evidence should not be considered to prove that Gore acted in conformity with his past behavior. Id. The supreme court reaffirmed its holding in Derouen v. State, 994 So.2d 748 (Miss.2008), that evidence of prior sexual acts may be admissible if it is for the purpose of showing motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, especially when coupled with a limiting instruction given to the jury. Gore, 37 So.3d at 1187 (¶ 20). The supreme court quoted an Alabama Supreme Court case on the issue of remoteness: “[w]here the competency of evidence is doubtful because of remoteness, the better practice is to admit the evidence, leaving it to the jury to determine its credibility and weight[.]” Id. at 1187 (¶ 19) (quoting Ex Parte Register, 680 So.2d 225, 228 (Ala.1994)).
¶ 19. More recently in Young v. State, 106 So.3d 775, 779-81 (¶¶ 17-18) (Miss. 2012) (rehearing denied), the supreme court, reaffirming its holding in Gore, found that the circuit court properly admitted the testimony from John Young’s half-sister about sexual abuse inflicted upon her by Young over twenty years previously. The supreme court stated that the testimony was permissible to show that Young’s motive was a “ ‘seemingly uncontrollable desire to partake in pedophilic sexual activities with young and developing female juveniles’ and that both assaults were part of a ‘common plan, scheme, or system’ that involved Young taking advantage of family relationships to engage in sexual activities with prepubescent girls.” Id. at *4 (¶ 17). The supreme court ultimately found that this Court was correct in finding that the testimony was admissible, “[bjecause this evidence was properly admitted under Rule 404(b), filtered through Rule 403, and accompanied by an appropriately-drafted limiting or cautionary instruction to the jury[.]” Young, 106 So.3d at 780 (¶ 18) (citations and quotation marks omitted).
¶ 20. In the present case, Ettinger and Wayne described in vivid detail the sexual abuses. Ettinger testified that Westbrook molested him numerous times from the ages of five to nine or ten by luring him to the garage or a back room of the home. Westbrook also attempted to have anal sex with Ettinger and have Et-tinger perform oral sex on him. When asked if he had any doubt about “what [Westbrook] wants sexually!,]” Ettinger responded: “Young boys.” Wayne testified that Westbrook molested and raped him on numerous occasions while he was four to five years old. According to Wayne, Westbrook would intimidate him into keeping quiet by telling Wayne he was a police officer. Wayne testified that there was “[absolutely no doubt that [Westbrook was] a child molester and a *616 rapist.” After both Ettinger and Wayne testified, the circuit judge gave the jury the following limiting instruction: “[T]he acts testified to by [Ettinger or Wayne] are related to charges about which the defendant is not presently on trial, and they are to be considered by you only for the limited purposes of showing proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, or accident.” (Emphasis added). The jury also received a written jury instruction stating:
[T]he acts testified to by [Wayne] and Ettinger are acts relating to charges for which [Westbrook] is not presently on trial and are to be considered only for the limited purpose of showing proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. You cannot and must not simply infer that the defendant acted in conformity with his previous acts and that he is therefore guilty of the charge for which he is presently on trial.
According to the State, the purpose of offering the testimony from Ettinger and Wayne was to show Westbrook’s “pedo-philic activity with young and developing males” and the use of intimidation to keep his victims silent. The circuit court followed Mississippi precedent found in Derouen and Gore by admitting evidence of prior sexual acts for a limited purpose under Rule 404(b) after a Rule 403 determination that the probative value was not substantially outweighed by the danger of unfair prejudice to Westbrook and by providing appropriate limiting instructions to the jury about the limited purpose for which it could use the prior-sexual-acts testimony. As such, we cannot find that the circuit court abused its discretion in allowing such evidence in at trial.
¶ 21. This issue is without merit.
¶ 22. THE JUDGMENT OF THE WARREN COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, MOLESTATION, AND SENTENCE OF FIFTEEN YEARS WITH TWELVE YEARS TO SERVE, THREE YEARS SUSPENDED, AND THREE YEARS OF POST-RELEASE SUPERVISION, AND FINE OF $5,000, AND CONVICTION OF COUNT II, ENTICEMENT OF A CHILD FOR SEXUAL PURPOSES, AND SENTENCE OF TWENTY YEARS WITH FIFTEEN YEARS TO SERVE, FIVE YEARS SUSPENDED, AND FIVE YEARS OF POST-RELEASE SUPERVISION, AND FINE OF $50,000, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH THE SENTENCES TO RUN CONSECUTIVELY TO ONE ANOTHER, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WARREN COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, MAXWELL AND FAIR, JJ., CONCUR. JAMES, J., NOT PARTICIPATING.

. Due to the age of the victim at the time of the crimes, we refer to him in this opinion using a pseudonym.