# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-KA-01405-COA

| | |
|---|---|
| **RYAN MCCLENDON** | **APPELLANT** |

v.

| | |
|---|---|
| **STATE OF MISSISSIPPI** | **APPELLEE** |

| | |
|---|---|
| DATE OF JUDGMENT: | 02/13/2013 |
| TRIAL JUDGE: | HON. THOMAS J. GARDNER III |
| COURT FROM WHICH APPEALED: | LEE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JONATHAN W. MARTIN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LISA L. BLOUNT |
| DISTRICT ATTORNEY: | JOHN RICHARD YOUNG |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF ARMED ROBBERY AND SENTENCED TO TWENTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH FIFTEEN YEARS SUSPENDED AND FIVE YEARS OF POST-RELEASE SUPERVISION |
| DISPOSITION: | AFFIRMED – 12/02/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., FAIR AND JAMES, JJ.**

**IRVING, P.J., FOR THE COURT:**

¶1. A Lee County jury found Ryan McClendon guilty of armed robbery. The circuit court sentenced McClendon to twenty-five years in the custody of the Mississippi Department of Corrections, with fifteen years suspended and five years of post-release supervision. Aggrieved, McClendon appeals, asserting that his trial counsel was ineffective and that the

verdict was against the overwhelming weight of the evidence.

¶2.     Finding no reversible error, we affirm.

## FACTS

¶3.     On the evening of November 20, 2010, Nancy Hudson was getting into her mother's car, which was parked in a well-lit area on Jackson Street in Tupelo, Mississippi, when McClendon, who was dressed in all black with a black toboggan cap, walked across the street toward Nancy, held a gun to her head, and demanded that she give him her purse. Nancy was able to remove her cell phone before handing the purse to McClendon.

¶4.     McClendon ran across the street and was almost hit by a car driven by Kayla Lawrence. Elizabeth Watts and Pam Genry were passengers in Kayla's car. McClendon, after regaining his composure, continued to run across the street and ran behind an apartment complex. The women noticed Nancy crying and drove back to check on her. Nancy called the police. Tupelo Police Sergeant James Hood responded to the call around 9:00 p.m. Sergeant Hood called for a K9 officer, and Officer Zachary Anderson responded to the scene. Officer Anderson had his dog track the armed-robbery suspect through a field and to the back of a house where a black shirt, a purse, and a gun were found. The women gave their statements to the police and left the scene. Later that same evening, the women saw McClendon walking down another street and called 911. After further investigation, McClendon was arrested and indicted for the armed robbery of Nancy.

¶5.     At trial, Nancy testified that she did not get a good look at her assailant, but she did notice that he was a male individual not much taller than she. Nancy also stated that after

2

the assailant ran across the street, it looked like "he threw something and then he went around the side of the apartment complex."

¶6.     Christopher Allen, an acquaintance of McClendon, testified that on November 20, 2010, the night of the robbery, McClendon pulled up to Christopher's apartment in a car and told Christopher that he was "fixing to hit a lick," which means that McClendon was about to rob somebody. Christopher further testified that McClendon was wearing a black sweatshirt, pants, and a toboggan cap. Christopher further testified that he did not see a gun. Candace Nalls, Christopher's girlfriend and a person who has known McClendon since 2009, testified that McClendon came into the apartment and also told her that he was trying to "hit a lick." She further testified that she saw McClendon about a week later, and at that time, McClendon said to her, "I hit a lick and I could have had some money, but I dropped the purse [while] running [away]."

¶7.     Elizabeth testified that she was in the passenger seat of Kayla's car. She explained that she saw a man run across the road in front of the car, clutching something underneath his arm. She stated that it was the same man they had spotted later that evening walking down a different street. At trial, Elizabeth identified McClendon as the individual that she had seen on the night of the robbery. Kayla testified that she was driving on Jackson Street when she first saw McClendon. She stated that she made eye contact with him. Despite having identified a person, other than McClendon, in a photo lineup during the investigative stage of the proceedings, Kayla identified McClendon during trial, while affirming the description of the assailant that she had given to the police a couple of days after the incident.

3

¶8.     Officer Anderson testified that his dog tracked behind the apartment complex and through a hole in a fence, through a thicket, and into a field. After entering the field, the dog took a left, went south, and came to another fence. Officer Anderson further testified that the dog jumped over this fence into the back yard of a residential home, where he found a black shirt. Also, Officer Anderson testified that while backtracking, he found a purse and a gun in the thicket.

¶9.     Officer Lynette Sandlin was the lead investigator in this case, and she took a statement from Nancy and interviewed Kayla and her passengers on the night of the robbery and also a few days later. She testified that she obtained the purse, the weapon, and the long-sleeve black tee shirt found during the investigation and sent the items to the crime lab. According to the crime-lab report, no fingerprints could be identified on the weapon, but an inconclusive palm print was lifted from handle of the weapon. Sandlin also stated that she arranged the photo lineup with Elizabeth and Kayla and that both women identified individuals who were not McClendon. Sandlin testified that Jeremy McClendon, the defendant's cousin, made a statement to the police and identified McClendon as the one who committed the robbery.

¶10.    McClendon testified in his own defense. He claimed that he was at home all day with Darvelyn Johnson, his girlfriend, babysitting a friend's baby. McClendon admitted knowing Candace and Christopher. However, he denied that he visited Christopher at Christopher's apartment on the night of the robbery and stated that Christopher and Candace must have made up the story—that he told them that he was going to hit a lick. He also denied robbing Nancy. He further claimed that he had dreadlocks on November 20, 2010, and did not cut his hair until December 2010. He explained that he knew he cut his hair around December

4

14, 2010, because he wanted to look professional for his mother's party following the renewal of her wedding vows, which was held on December 16, 2010. Finally, he testified that he never wore a toboggan cap when he had dreadlocks, because he wanted his hair to flow.

¶11. Darvelyn testified that she and McClendon were at his trailer all day watching a friend's baby and that McClendon never left. Darvelyn also testified that around 8:00 p.m. or 8:30 p.m., Glenda Payne, McClendon's aunt, came to bring over some bottles for the baby because Darvelyn had lost the baby's bottle. Darvelyn further testified that McClendon had dreadlocks at the time she was with him babysitting. Glenda testified that she saw him at his trailer around 8:30 p.m. on November 20, 2010, when she dropped off some bottles for the baby. She testified that she stayed awhile to play with the baby. According to her, McClendon did not leave the trailer.

## DISCUSSION

### I. *Ineffective Assistance of Counsel*

¶12. On appeal, McClendon argues that he received ineffective assistance of counsel because of his trial counsel's failure to (1) request jury instructions on misidentification and impeachment of witnesses, and (2) object to the State's leading questions.

> It is unusual for this Court to consider a claim of ineffective assistance of counsel when the claim is made on direct appeal. This is because we are limited to the trial court record in our review of the claim[,] and there is usually insufficient evidence within the record to evaluate the claim. The Mississippi Supreme Court has stated that, where the record cannot support an ineffective assistance of counsel claim on direct appeal, the appropriate conclusion is to deny relief, preserving the defendant's right to argue the same issue through a petition for post-conviction relief. This Court will rule on the merits on the rare occasions where (1) the record affirmatively shows

5

ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial judge.

*Aguilar v. State*, 847 So. 2d 871, 878 (¶17) (Miss. Ct. App. 2002) (internal citations omitted). The record does not affirmatively show ineffectiveness of constitutional dimensions, and the parties have not stipulated that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the circuit court. Consequently, we decline to address this issue, leaving McClendon free to seek relief through the post-conviction process if he desires to do so.

II.    *Weight of the Evidence*

¶13.    McClendon also argues that the circuit court erred in denying his motion for a new trial because the verdict was against the weight of the evidence. "When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb [the] verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Bush v. State*, 895 So. 2d 836, 844 (¶18) (Miss. 2005) (citation omitted).

¶14.    Here, McClendon asserts that Elizabeth's and Kayla's photo-lineup misidentification, the lack of physical evidence, and the conflicting testimony prove that the verdict is against the overwhelming weight of evidence. While Kayla and Elizabeth did identify a different individual during the photo lineup, at trial, both women identified McClendon as the person they saw running away from Nancy's car on the night of the robbery and explained that the pictures in the photo lineup did not clearly show the individuals' faces.

¶15.    Christopher and Candace testified that, before the robbery, McClendon told them that

6

he was going to hit a lick. About a week later, according to Candace, McClendon told her, "I hit a lick and I could have had some money, but I dropped the purse [while] running [away]." Officer Sandlin noted that Jeremy came forward and made a statement that his cousin, McClendon, committed the robbery. A gun, Nancy's purse, and a black long-sleeve tee shirt were found near the area where McClendon was last seen.

¶16. Based on these facts, it cannot be legitimately argued that the verdict is against the weight of the evidence.

> It is well settled that the jury has the duty to determine the impeachment value of inconsistencies or contradictions, as well as testimonial defects of perception, memory and sincerity. The court has stated numerous times that, even when there are conflicting statements and testimony, it is for the jury to weigh the credibility of testimony and statements.

*Watts v. State,* 958 So. 2d 294, 298 (¶12) (Miss. Ct. App. 2007) (internal citations omitted). In short, the jury, the ultimate fact-finder, accepted the State's evidence and rejected McClendon's alibi defense. We find that allowing the verdict to stand will not sanction an unconscionable injustice. Accordingly, we affirm.

¶17. **THE JUDGMENT OF THE LEE COUNTY CIRCUIT COURT OF CONVICTION OF ARMED ROBBERY AND SENTENCE OF TWENTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH FIFTEEN YEARS SUSPENDED AND FIVE YEARS OF POST-RELEASE SUPERVISION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LEE COUNTY.**

**LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.**