# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-KA-00983-COA

RICKY L. SHOEMAKER, SR. A/K/A RICKY          **APPELLANT**
SHOEMAKER A/K/A RICKY L. SHOEMAKER
A/K/A RICKY L. SHOEMAKER, JR. A/K/A
RICKEY L.  SHOEMAKER A/K/A RICKEY
SHOEMAKER

v.

STATE OF MISSISSIPPI                                     **APPELLEE**

DATE OF JUDGMENT:            05/23/2016
TRIAL JUDGE:                 HON. STEVE S. RATCLIFF III
COURT FROM WHICH APPEALED:   RANKIN COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:      OFFICE OF STATE PUBLIC DEFENDER
                             BY: JUSTIN TAYLOR COOK
ATTORNEY FOR APPELLEE:       OFFICE OF THE ATTORNEY GENERAL
                             BY: KAYLYN HAVRILLA MCCLINTON
DISTRICT ATTORNEY:           MICHAEL GUEST
NATURE OF THE CASE:          CRIMINAL - FELONY
DISPOSITION:                 AFFIRMED: 03/06/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE GRIFFIS, P.J., WESTBROOKS AND TINDELL, JJ.**

**TINDELL, J., FOR THE COURT:**

¶1.     A Rankin County jury convicted Ricky Shoemaker of Count I, sexual battery, and Count II, gratification of lust.  *See* Miss. Code Ann. §§ 97-3-95(1)(d) & 97-5-23(1) (Rev. 2014).  On appeal, Shoemaker asserts the following issues:  (1) he received ineffective assistance of counsel; (2) his indictment was defective; (3) his convictions violate his right against double jeopardy; and (4) the circuit court erroneously admitted prior-bad-acts evidence.

¶2.    Finding no error, we affirm Shoemaker's convictions and sentences.

**FACTS**

¶3.    On January 16, 2015, Shoemaker's thirteen-year-old step-granddaughter, Amy,[1] told her mother that Shoemaker had sexually assaulted her on numerous occasions. Amy's parents contacted the Rankin County Sheriff's Office, which investigated the reported sexual abuse. On July 2, 2015, a grand jury indicted Shoemaker for Count I, sexual battery, and Count II, gratification of lust. After amendment, the indictment charged that, over a two-year span,[2] Shoemaker committed the alleged acts against Amy at a time when Shoemaker was more than twenty-four months older than Amy.

¶4.    On March 3, 2016, the State filed a notice of intent to elicit testimony under Mississippi Rule of Evidence 404(b) about other prior bad acts Shoemaker had committed. The notice provided that Freedom Newton, Shoemaker's former stepdaughter, planned to testify Shoemaker sexually assaulted her when she was a child. The State asserted Newton's testimony was admissible under Rule 404(b) "to prove . . . motive, opportunity, intent, preparation, plan, knowledge, identity, [or] absence of mistake or accident." Shoemaker filed an unsuccessful motion to limit the trial testimony to only the acts charged in the indictment.

¶5.    At trial, Amy's mother, Becky, testified that she was Shoemaker's cousin and had married Shoemaker's stepson, Cliff. Becky testified that she and Cliff separated in 2007 or

---

[1] Due to the nature of the offenses and the victim's age, we use an alias to protect her identity. We also use an alias for the names of the victim's relatives who are mentioned throughout the opinion.

[2] The original indictment charged that Shoemaker committed the acts over a five-year span.

2

2008 and then divorced in 2010. During the couple's marriage, the family lived next door to Cliff's mother and Shoemaker. After the separation, Becky and the children moved. However, Cliff continued to live next door to his mother and stepfather, and the children visited Cliff every other weekend and on holidays.

¶6. Becky testified that, around the time she and the children moved, Amy failed the fourth grade and had to repeat it. Becky also testified that Amy began having emotional outbursts as though "something was bothering her." However, Becky stated that she did not know at the time the reason for Amy's outbursts.

¶7. According to Becky, when Amy was about eleven years old, she stopped visiting her dad's house unless he asked her to visit or unless her mother made her go. On January 16, 2015, Amy's grandmother and Shoemaker hosted a birthday party for Amy's younger cousin. Although Amy begged not to attend, Becky insisted. After Amy grew hysterical, though, Becky questioned her daughter further. Amy finally disclosed Shoemaker's sexual abuse. Becky testified that she believed Amy had told her the truth because of "the sheer terror I [saw] on that child's face when she told me, and you can't make stuff like that up." Becky called Amy's father, who contacted the authorities. Becky testified that Amy had "gained absolutely nothing" by disclosing the sexual abuse. In fact, Becky stated that Amy had continued to experience problems at school since the disclosure and had even lost relationships with friends and close family members who did not believe her.

¶8. Following Becky's testimony, the courtroom was cleared for Amy, who was fourteen years old at the time of trial. Amy stated that Shoemaker's sexual abuse began when she was

3

five or six and ended when she was eleven or twelve. Amy admitted that she stopped wanting to visit her dad because she also had to go to her grandparents' house, where "[b]ad stuff" happened. Amy testified that the "[b]ad stuff" happened "a lot" when she and Shoemaker were alone together in his car, his house, and her dad's house.

¶9. According to Amy, Shoemaker touched both the outside and inside of the "private areas between [her] legs" with his hands. Amy testified that Shoemaker touched her both on top of and underneath her clothes in her "private areas" and that he touched her chest with both his hands and his mouth. In addition, Amy stated that Shoemaker made her massage "his private areas" with her hands and that sometimes a "[g]ooey, whitish, clearish" substance came out.

¶10. Amy testified that Shoemaker said no one would believe her if she revealed the sexual abuse. She stated that Shoemaker also said any disclosure would get him into trouble, which would negatively affect Amy's younger cousin who lived with Shoemaker and his wife. After finally revealing the abuse to her mother, Amy testified that "a lot" had changed and that she was no longer as close to several family members.

¶11. Sheila Tucker, a juvenile investigator with the Rankin County Sheriff's Department, next testified for the State. Based on her investigation into the reported sexual abuse, Tucker contacted the Children's Advocacy Center and scheduled a forensic interview for Amy. From a nearby room, Tucker observed Amy's interview. Tucker stated that Amy seemed nervous and embarrassed to talk about the sexual abuse. However, Tucker further testified that Amy told the interviewer "that on different occasions [Shoemaker] would rub her on her

4

no[-]no spots, what she called her vaginal spots, what she pointed [to] on the diagram" the forensic interviewer provided. Amy further told the forensic interviewer that Shoemaker "would touch her under her clothes[,] and then he would put his finger in her at different times and that he . . . had made her rub his no[-]no spot[,] and she saw gooey sticky stuff come out of it like he was peeing."

¶12. On cross-examination, Tucker testified that she interviewed Amy, Amy's mother, and Shoemaker. Because of the time lapse between the purported abuse and Amy's disclosure, no physical evidence existed to support the sexual-abuse allegations. Tucker stated that Shoemaker repeatedly denied the allegations but that he admitted Amy had stopped visiting him as regularly as her brothers. Tucker testified that Shoemaker identified several people she should interview, including his former stepdaughter, Newton. Shoemaker told Tucker the people he listed could confirm that he "would never do anything like that as far as sexually assaulting [Amy] or anybody."

¶13. Following Tucker's testimony, the State called Shoemaker's former stepdaughter, Newton, as a witness. At the time of Shoemaker's trial, Newton was thirty-nine years old with a family of her own. Between the time that Newton completed kindergarten and third grade, her mother twice married and divorced Shoemaker. According to Newton, Shoemaker "physically, emotionally, mentally, and sexually abused" her. Specifically, Newton testified as follows:

> [Shoemaker] would encourage me to touch him. He would touch me at first on top of the clothing and under the clothes. He would encourage me to touch him down in his pants, to jerk him off, then to orally please him until he ejaculated. Sometimes he would encourage [me] to [lie] on top of him with

5

my pants off or have me lock my ankles around each other and move myself up and down until he got off. And this happened several occasions. I would orally get him off all the time. It was too numerous to count how often. It was daily.

¶14. Newton testified that Shoemaker threatened to beat her and to hurt her mother, her siblings, and the family pets if Newton disclosed the abuse. Although Newton stated that she eventually told several family members about Shoemaker's conduct, she never reported the abuse to authorities because her family members dissuaded her. When she became a teenager, however, Newton began attending counseling and therapy. Newton testified that she first heard about Shoemaker's trial when she received phone calls from her mother and the district attorney's office. According to Newton, she had nothing to gain by testifying, and she stated that she had never met Amy prior to the trial.

¶15. After Newton's testimony, the State rested its case-in-chief. The defense then moved for a directed verdict. Following the circuit court's denial of the motion, the defense called Shoemaker to testify. Shoemaker denied that he ever sexually abused Newton or Amy. Shoemaker corroborated Newton's testimony that she and Amy did not know each other prior to the trial. Shoemaker further agreed that he had not seen Newton since she was about sixteen. Shoemaker testified that he once had a good relationship with Newton but that she grew to hate him after he separated from her mother the second time. He further testified that Amy accused him of sexual abuse and testified against him because she was jealous.

¶16. The defense's second and final witness was Shoemaker's mother-in-law, Doris, who lived with her daughter and Shoemaker. Prior to the sexual-abuse allegations, Doris stated that Amy came to visit all the time, even when Shoemaker was present, and that Amy never

6

indicated she did not want to be around Shoemaker. On cross-examination, Doris, who is wheelchair bound, testified that she mostly stayed in the kitchen, which allowed her to see into the home's living room but not the bedrooms.

¶17. After considering the parties' evidence and testimony, the jury found Shoemaker guilty of both charges. The circuit court sentenced Shoemaker to twenty years in the custody of the Mississippi Department of Corrections for his sexual-battery conviction and to a concurrent fifteen-year sentence for his gratification-of-lust conviction, with five years suspended and five years of supervised probation. The circuit court also ordered Shoemaker to register as a sex offender with the Mississippi Department of Public Safety. *See* Miss. Code Ann. § 45-33-25 (Rev. 2015). Shoemaker filed an unsuccessful motion for a judgment notwithstanding the verdict or, in the alternative, a new trial. Aggrieved by his convictions and sentences, Shoemaker appeals.

## DISCUSSION

### I. Ineffective Assistance of Counsel

¶18. Shoemaker asserts his trial attorney rendered ineffective assistance by failing to object to Tucker's testimony about Amy's statements to the forensic interviewer. According to Shoemaker, Tucker's testimony about the statements constituted inadmissible hearsay. To succeed on his ineffective-assistance-of-counsel claim, Shoemaker must show (1) his counsel's performance was deficient and (2) the deficiency prejudiced him. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984). If Shoemaker fails to meet either prong, his claim fails. *See Pinter v. State*, 221 So. 3d 378, 386 (¶17) (Miss. Ct. App. 2017).

7

¶19. This Court does not usually consider an ineffective-assistance claim on direct appeal since we are limited to the trial-court record, which often lacks sufficient evidence to evaluate the claim. *McClendon v. State*, 152 So. 3d 1189, 1191-92 (¶12) (Miss. Ct. App. 2014). "[W]here the record cannot support an ineffective[-]assistance[-]of[-]counsel claim on direct appeal, the appropriate conclusion is to deny relief, preserving the defendant's right to argue the same issue through a petition for post[]conviction relief." *Id.* (quoting *Aguilar v. State*, 847 So. 2d 871, 878 (¶17) (Miss. Ct. App. 2002)). However, we may address the claim's merits on direct appeal when "(1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate and [we] determine[] that findings of fact by a trial judge able to consider the demeanor of witnesses, etc., are not needed." *Bell v. State*, 202 So. 3d 1239, 1242 (¶12) (Miss. 2016) (quoting *Read v. State*, 430 So. 2d 832, 841 (Miss. 1983)).

¶20. Mississippi caselaw clearly establishes "that, with respect to the overall performance of the attorney, counsel's choice of whether or not to file certain motions, call witnesses, ask certain questions, or make certain objections falls within the ambit of trial strategy and cannot give rise to an ineffective[-]assistance[-]of[-]counsel claim." *Pinter*, 221 So. 3d at 386 (¶19) (citation and internal quotation marks omitted). Based on the record before us, we cannot say whether Shoemaker's trial attorney had a strategic reason for not objecting to Tucker's testimony about Amy's statements during the forensic interview. In addition, even if Shoemaker's attorney had objected to the disputed testimony, we do not know whether the State could have articulated a response sufficient to persuade the circuit court to admit the

8

testimony. Because we find the trial record inadequate to evaluate Shoemaker's assignment of error, we deny his claim without consideration, thereby preserving it for a postconviction-relief motion. *See Webb v. State*, 113 So. 3d 592, 602 (¶¶39-41) (Miss. Ct. App. 2012).

## II.   Defective Indictment

¶21.   Shoemaker claims that, due to the broad date ranges identified, his "indictment failed to specifically and adequately allege criminal conduct for which [he] could viably assert a theory of defense[, especially an alibi defense]." "The question of whether an indictment is fatally defective is an issue of law and deserves a relatively broad standard of review by this Court. The legal sufficiency of an indictment must be reviewed de novo." *Williams v. State*, 169 So. 3d 932, 935 (¶7) (Miss. Ct. App. 2014) (quoting *Young v. State*, 119 So. 3d 309, 313 (¶10) (Miss. 2013)).

¶22.   "The supreme court has held that a specific date in a child[-]sexual[-]abuse case is not required so long as the defendant is fully and fairly advised of the charge[s] against him." *Pustay v. State*, 221 So. 3d 320, 342 (¶52) (Miss. Ct. App. 2016) (citation and internal quotation marks omitted). The indictment's primary purpose is to give the defendant fair notice of the crimes charged. *Jones v. State*, 215 So. 3d 508, 510-11 (¶8) (Miss. Ct. App. 2017). "An indictment must contain (1) the essential elements of the offense[s] charged, (2) sufficient facts to fairly inform the defendant of the charge[s] against which he must defend, and (3) sufficient facts to enable him to plead double jeopardy in the event of a future prosecution for the same offense[s]." *Id.* at 511 (¶8) (quoting *Davis v. State*, 171 So. 3d 537, 540 (¶11) (Miss. Ct. App. 2015)).

¶23. In *Morris v. State*, 595 So. 2d 840, 840 (Miss. 1991), a grand jury indicted the defendant for child molestation. The defendant's stepdaughter accused him of molesting her over a cumulative period of one to two-and-a-half years when she was around nine or ten years old. *Id.* at 841. Morris's indictment alleged that the molestation occurred between March 1986 and May 1986. *Id.* Morris filed an unsuccessful motion to require the State to provide a more definite time period for the offense. *Id.* at 842. On appeal, Morris argued his indictment's "failure to provide specific dates deprived him of the opportunity to present a convincing alibi to the jury." *Id.* at 841-42.

¶24. In addressing Morris's argument, the supreme court recognized that, "[t]raditionally, time and place have been viewed as not requiring considerable specificity because they ordinarily do not involve proof of an element of crime." *Id.* at 842. The *Morris* court further held that prior caselaw only required "that the defendant be given the specific date *if at all possible.*" *Id.* (citing *Wilson v. State*, 515 So. 2d 1181, 1183 (Miss. 1987)). Morris's stepdaughter, who was fifteen at the time of trial, could not recall the specific dates of the molestation. *Id.* at 841-42. The *Morris* court found her testimony "amply illustrate[d] the fact that the State could not narrow the time frame any more than it did." *Id.* After determining that Morris's indictment fully and fairly notified him of the charges against him, the supreme court concluded his argument lacked merit. *Id.*

¶25. We find *Morris* controls the present case. Shoemaker's original indictment charged him with committing the alleged crimes during a five-year time period. Like *Morris*, Shoemaker filed a pretrial motion requesting that his indictment provide more specific dates

10

so he could establish an alibi defense. In response to Shoemaker's motion, the State asked during the pretrial hearing that the circuit court amend Shoemaker's indictment and narrow the identified time frame to two years. The State argued it could not provide more specific dates because the acts were recurrent, which like the victim in *Morris*, prevented Amy from recalling exact dates and times. After considering the parties' arguments, the circuit court denied Shoemaker's motion for more date specificity and granted the State's motion to amend the indictment to reflect a two-year time period.

¶26. In pertinent part, Shoemaker's amended indictment read as follows:

Count I: [Shoemaker,] . . . on, about[,] or between the dates of [June 27], 2010[,] to [June 27], 2012, . . . being a male human being above the age of eighteen (18) years, . . . did willfully, unlawfully, and intentionally engage in sexual penetration as defined by [section] 97-3-97 with [Amy], a female child under the age of fourteen (14) years, . . . by inserting his finger in [Amy's] vagina, at a time when [Shoemaker] was more than twenty-four (24) months older than [Amy], . . . in violation of [s]ection 97-3-95(1)(d)[.]

Count II: And based upon a series of acts connected together and constituting parts of a common scheme and plan, [Shoemaker,] . . . on, about[,] or between the dates of [June 27], 2010[,] to [June 27], 2012, . . . being a male human being above the age of eighteen (18) years, . . . who, for the purpose of gratifying his lust or indulging his depraved licentious sexual desires, did willfully, unlawfully, and intentionally handle, touch[,] or rub with his hands or any part of his body, the body of [Amy], a minor female child under the age of sixteen (16) years, . . . in violation of [section] 97-5-23(1)[.]

¶27. At trial, Amy testified she could not say how many times the sexual abuse occurred or the exact dates on which it occurred because it happened "a lot." She stated, however, that the abuse began when she was five or six and ended when she was eleven or twelve. On cross-examination, Amy further testified that she thought the abuse began in 2007 and ended in 2012. As discussed, each count of Shoemaker's indictment charged that the acts occurred

11

between the last two years of this time frame from 2010 to 2012.

¶28.    As in *Morris*, we find the State could not provide a more definite time frame for the alleged offenses against Shoemaker than it already did in the amended indictment. *Cf. Morris*, 595 So. 2d at 842. Amy testified the sexual misconduct occurred over a five-year to seven-year time span when she was between five and twelve years old. Although the State narrowed the time frame provided in the indictment from five years to two years, Amy still testified that the sexual misconduct occurred so often she could not give specific dates and times. Indeed, the trial testimony reflects that Shoemaker and Amy had constant interaction with each other during the period at issue. Over the course of her parents' marriage, Amy's family lived next door to her paternal grandmother and Shoemaker. Even after Amy's parents divorced, she and her brothers frequently visited their father, who continued to live next door to his mother and Shoemaker.

¶29.    Thus, based on the specific facts presented, we find the State could not narrow the date range provided in Shoemaker's indictment counts any more than it already did. We therefore find no merit to this assignment of error. However, in reaching our decision, we caution prosecutors to limit the time frame provided in an indictment as much as reasonably possible to sufficiently notify defendants of the charges against them and to allow defendants the opportunity to prepare a defense.

### III.    Double Jeopardy

¶30.    Shoemaker contends the State failed to prove that his charges for sexual battery and gratification of lust constituted separate and distinct acts. Citing the supreme court's decision

12

in *Friley v. State*, 879 So. 2d 1031 (Miss. 2004), Shoemaker asserts gratification of lust is a lesser-included offense of sexual battery. He therefore argues that his lustful-touching conviction merged with his sexual-battery conviction and violated his right against double jeopardy. We review double-jeopardy claims de novo. *Woods v. State*, 30 So. 3d 362, 365 (¶8) (Miss. Ct. App. 2009).

¶31. Upon review, we find Shoemaker's argument is procedurally barred. As previously discussed, Shoemaker raised an objection before the circuit court that his indictment lacked date specificity and was therefore too vague and ambiguous. However, the record fails to show that Shoemaker ever objected to the indictment on the ground that Counts I and II should have merged. "When a defendant fails to object to the form of the indictment, the issue is waived on appeal." *Pustay*, 221 So. 3d at 353 (¶109). "Failure to make a contemporaneous objection constitutes waiver of the objection and cannot be raised for the first time on appeal because the trial court is denied the opportunity to consider the issue and possibly remedy the situation." *Copeland v. Copeland*, 904 So. 2d 1066, 1073 (¶24) (Miss. 2004).

¶32. Notwithstanding the procedural bar, we also find that Shoemaker's double-jeopardy claim lacks merit. "[S]exual battery of a child and unlawful touching are separate and distinct criminal offenses. While sexual battery of a child requires some sort of penetration[,] . . . unlawful touching does not." *Faulkner v. State*, 109 So. 3d 142, 147 (¶20) (Miss. Ct. App. 2013). "[U]nder 'particular circumstances[,]' when penetration is achieved by touching a child under the age of fourteen, fondling or molestation is a lesser-included offense of

13

sexual battery." *Id.* at 147-48 (¶20) (quoting *Friley v. State*, 879 So. 2d 1031, 1035 (¶17) (Miss. 2004)). However, "*Friley*'s general holding—that it is not possible to penetrate a minor without touching the child—is not absolute." *Id.* at 148 (¶20) (citing *Tapper v. State*, 47 So. 3d 95, 103 (¶30) (Miss. 2010)). Instead, our caselaw recognizes:

> [I]t is possible to commit an unlawful touching without committing sexual battery. And where sufficient evidence exists to support separate and distinct acts of fondling and sexual battery, separate indictable charges can properly stand without implicating jeopardy issues. This is so even if the criminal acts are closely connected or based on a common nucleus of fact . . . .

*Id.* at (¶21) (internal citations and quotation marks omitted).

¶33. In *Mosby v. State*, 134 So. 3d 850, 857 (¶25) (Miss. Ct. App. 2014), this Court found the victim's testimony established two distinct criminal acts—that the defendant (1) fondled her breast and (2) digitally penetrated her vagina. As a result, we found no merit to the defendant's claim that his sexual-battery and fondling convictions merged and violated his right against double jeopardy. *Id.*

¶34. As in *Mosby*, we find the State presented sufficient evidence in the present case "to support separate and distinct acts of fondling and sexual battery[.]" *Faulkner*, 109 So. 3d at 148 (¶21) (citations omitted). Amy testified to a long-term pattern of sexual abuse by Shoemaker. According to Amy, on numerous occasions, Shoemaker touched her both outside and inside her "privates." In addition to testifying that Shoemaker digitally penetrated her vagina, Amy stated that he also fondled her chest with his hands and mouth. Amy testified that, at least one time, she remembered her shirt "was pulled over [her] shoulders[,] like over [her] arms[,] but just around [her] neck[,]" while Shoemaker fondled

14

her chest. Based on Amy's testimony, we find the record fails to support Shoemaker's argument that his gratification-of-lust conviction merged with his sexual-battery conviction. We therefore find this issue lacks merit.

### IV. Prior-Bad-Acts Evidence

¶35. In his final assignment of error, Shoemaker alleges the circuit court erred by admitting Newton's testimony that Shoemaker also sexually abused her when she was a child. We review the circuit court's admission or exclusion of evidence for abuse of discretion. *Strickland v. State*, 220 So. 3d 1027, 1032 (¶9) (Miss. Ct. App. 2016).

¶36. Rule 404(b) prohibits the use of prior-bad-acts evidence to prove a person's character to show that he acted in conformity therewith. *Pritchett v. State*, 201 So. 3d 1095, 1097 (¶9) (Miss. Ct. App. 2016). However, Rule 404(b) permits the use of such evidence to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Id.* Before admitting prior-bad-acts evidence, a trial judge should filter the evidence through Mississippi Rule of Evidence 403 and determine whether the evidence's probative value outweighs its prejudicial effect to the defendant. *Id.* at 1098 (¶10). Where the evidence's probative value outweighs its prejudice, the trial judge may admit the evidence. *Id.* In the context of child-sexual-abuse cases, even evidence of remote past sexual-abuse allegations may be admitted for a proper purpose under Rule 404(b), especially when coupled with an appropriate limiting instruction to the jury. *Westbrook v. State*, 109 So. 3d 609, 615 (¶18) (Miss. Ct. App. 2013).

¶37. In the present case, the State filed a notice of its intent to elicit Rule 404(b) testimony

15

from Newton, Shoemaker's former stepdaughter. The State asserted that Newton's testimony showed Shoemaker's motive, intent, preparation, and plan. At the pretrial hearing, Newton testified about Shoemaker's alleged sexual abuse toward her and her brother. Shoemaker's attorney raised no objection to Newton's testimony. However, the circuit court still made an on-the-record finding regarding Newton's proffered testimony. After considering the evidence's purpose under Rule 404(b) and filtering it through Rule 403's balancing test, the circuit court limited Newton's testimony to incidences involving Shoemaker's alleged sexual abuse toward her alone. The circuit court found Newton's testimony about Shoemaker's alleged sexual abuse of her was admissible for proper non-character purposes under Rule 404(b). The circuit court further stated that, after filtering the testimony through Rule 403's balancing test, it found the probative value of Newton's testimony outweighed the prejudice to Shoemaker.

¶38. The trial transcript reflects several similarities between Newton's and Amy's testimony about Shoemaker's sexual abuse. Similar to Amy, Newton testified that, when she was about six years old, Shoemaker began to abuse her on numerous occasions at home and in the car. Also similar to Amy, Newton stated that Shoemaker touched her both on top of and underneath her clothing and that he would encourage her to touch his penis until he ejaculated. Amy and Newton also testified that Shoemaker threatened to hurt them individually and to hurt their family members to prevent them from disclosing the abuse.

¶39. Following the parties' presentation of their evidence, the circuit court instructed the jury. In accordance with Mississippi caselaw, the circuit court issued the jury the following

16

limiting instruction on Newton's testimony:

> [A]cts testified to by . . . Newton are acts relating to charges for which the [D]efendant is not presently on trial and are to be considered only for the limited purpose of showing proof of motive, intent, preparation, or plan. You cannot and must not simply infer that the [D]efendant acted in conformity with his previous acts and that he is therefore guilty of the charges for which he is presently on trial.[3]

¶40. Upon review, we find the circuit court admitted the evidence of Shoemaker's alleged prior sexual acts for a proper Rule 404(b) purpose only after determining the evidence's probative value outweighed its prejudice under Rule 403. *See Westbrook*, 109 So. 3d at 616 (¶20). We also find the circuit court provided the jury an appropriate limiting instruction about the limited purpose for which it could consider the prior-bad-acts evidence. *Id.* We therefore find no abuse of discretion in the circuit court's admission of the evidence. *Id.* As a result, this issue lacks merit.

## CONCLUSION

¶41. Because we find no error, we affirm Shoemaker's convictions and sentences.

¶42. **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, WILSON, GREENLEE AND WESTBROOKS, JJ., CONCUR.**

---

[3] Although Shoemaker's attorney raised no objection to the limiting instruction, we note that the instruction's language substantially tracks that of other limiting instructions previously approved by the supreme court and this Court. *See Gore v. State*, 37 So. 3d 1178, 1184 (¶14) (Miss. 2010); *Strickland*, 220 So. 3d at 1034 (¶18).