# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-KA-00652-COA

RICKY E. ROBERSON A/K/A RICKY ROBERSON

APPELLANT

v.

STATE OF MISSISSIPPI

APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 02/21/2014 |
| TRIAL JUDGE: | HON. LESTER F. WILLIAMSON JR. |
| COURT FROM WHICH APPEALED: | LAUDERDALE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JULIE ANN EPPS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LISA L. BLOUNT |
| DISTRICT ATTORNEY: | BILBO MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 09/05/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

EN BANC.

BARNES, J., FOR THE COURT:

¶1.     Ricky Roberson appeals his convictions of two counts of child exploitation and one count of gratification of lust. Roberson raises ten issues on appeal. We find error as to two of the issues—(1) the introduction of a witness's prior consistent statement, and (2) the introduction of opinion testimony as to the veracity of witness testimony. Further, the State admits that the introduction of testimony that Roberson had fathered the child of a high-school student and that the child was put up for adoption was irrelevant. Although inadmissible, these three categories of evidence had little, if any, prejudicial effect given the weight of the evidence against Roberson. Thus, we find their admission was harmless error.

We find no error as to the remaining issues and affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2.     On Monday, September 10, 2012, S.E.[1] and her father met with officials at Clarkdale High School to report that an employee there, Roberson, had touched S.E. inappropriately. S.E. attended Clarkdale High School from 2010 through 2012.  During this time, Roberson was the girls' softball coach at the school, and S.E. was one of the players on the team.  John Compton, the school board's attorney, interviewed several students and a teacher regarding the allegation.  The school board concluded no further action was necessary.  S.E. then reported the allegations to the Lauderdale County Sheriff's Department.

¶3.     The sheriff's department's investigation led to an eight-count indictment against Roberson involving three victims.  Roberson was convicted of Counts I, II, and VIII.  Count I charged child exploitation during December 2010 as to victim L.B.  Count II charged child exploitation between February 14, 2011, and April 30, 2011, as to L.B.  Count VIII charged gratification of lust between June 2010 and August 31, 2010, as to S.E.  Count VII, which charged gratification of lust between 2003 and 2004 as to alleged victim B.L., was nolle prossed prior to trial.  A directed verdict was granted as to Count IV, which charged gratification of lust between June 1 and 10, 2012, as to S.E.  Roberson was acquitted of the remaining charges.

¶4.     At trial, S.E. testified that Roberson inappropriately touched her on approximately five occasions during the summer and school year in 2010.  S.E. alleged that between June 2010

---

[1] Initials are substituted, as this matter involves the sexual abuse of minors.

2

and August 2010, Roberson asked her multiple times to come to his office, where he touched and rubbed her outer and inner thigh, approximately an inch and a half below her crotch. She further testified that on three occasions in 2012, Roberson French kissed her in his office.

¶5. S.E. testified that a week after her eighteenth birthday on July 31, 2012, Roberson told her he had left something for her in her softball bag. She stated he asked her to come to his office to open it. S.E. testified he removed the following items from her bag: lotion, flowers, and various pink items—a hat, a racerback tank top, a water bottle, a cup, a bracelet, a Sharpie marker, and a "squishy toy." She stated that on another occasion he asked her if she had found the items he had left in her car. In her car she found pink flip-flops and pink sunglasses. Several of the items were admitted into evidence at trial. She stated that all the gifts were pink because Roberson knew that was her favorite color.

¶6. S.E. also alleged that in the summer of 2012, he invited her to a restaurant, and on more than one occasion he invited her to his hunting camp to "lay out nude" while he was there. She stated that more than once, he told her that her "butt looked good" in the pants she was wearing, and he asked her what color panties she was wearing. She testified that he told her he wanted her to wear pink lacy panties for him. She stated he also told her "that he made that body and he could look at it whenever he wanted to." She stated he would grab, slap, and rub her back side and legs. She testified she was too embarrassed to report his behavior at the time. She stated that she attended Clarkdale High School from ninth grade through the first half of her twelfth-grade year, but she left the school in December 2012 and did not return for the spring semester of her senior year because of Roberson's conduct.

3

¶7.    Roberson was interviewed by Detective David Rosenbaum on September 25, 2012. He also gave a written statement on that day. In his interview, Roberson initially denied S.E.'s allegations. However, later in the interview, he admitted he and S.E. hugged and kissed on several occasions, once kissing on the lips. But he denied any lustful intent and regretted any action S.E. might have mistaken as inappropriate. In his written statement, he wrote: "[T]he allegations made by [S.E.] are totally false. She conspired against me[,] even asking girls to lie[.] She admitted she was mad at me because of things I said[.]"

¶8.    The other victim, L.B., attended Clarkdale High School and was on the softball team from eighth grade through her graduation in May 2012. She testified that in December 2010, she went to the school to deliver money to Roberson for a team dinner. She stated she spoke with Roberson about the relationship she was in at the time; Roberson discussed his relationship with his wife, saying there was no passion left, and he told her his cancer had returned. She stated he told her that if she ever needed a real man, she knew where to go. She stated he also told her there was a benefit to being with an older man, that he could not get her pregnant.

¶9.    L.B. testified that Roberson knew she liked to fish and hunt, and he offered to take her to his hunting camp, so he could lie down with her in front of a fire and please her. She stated he told her about his sexual fantasies, such as wearing blindfolds and costumes and role playing. She testified he would contact her by phone and text and, during school, he would text her and ask her to come to his room at break. She testified she tried to avoid going to his room. L.B. stated that in January or February 2011, Roberson asked her to drive

4

him to his vehicle. She stated she agreed, and the two of them first went to a Mexican restaurant together. She testified that while she was driving, he told her to stop, and when she turned to ask why, he tried to kiss her on the lips.

¶10. L.B. also testified that Roberson gave her various gifts. She stated that he gave her chocolates on Valentine's Day in 2011. And although she could not recall the time frame, she testified he left gifts in her batting bag, car, and locker, and he gave her lotion, which he stated he wanted to rub on her legs. She stated he told her he liked her legs and would pay for breast implants if he could play with them whenever he wanted. She further stated he told her he bought her a vibrator, but she could only have it if she went to the hunting camp with him and let him use it on her.

¶11. L.B. testified she recognized that Roberson was interested in S.E. from watching their interactions. L.B. stated she told Roberson to leave S.E. alone because S.E. would get him in trouble. L.B. testified that Roberson called her on September 19, 2012, and thanked her for her support. She testified she did not understand his comment at the time.

¶12. In his written statement, Roberson admitted he talked to L.B. about "a lot of things sexually," which he knew was inappropriate. He denied that he wanted to have sex with her. He admitted a kiss did occur, but stated that L.B. mistakenly thought he was trying to kiss her on the lips. Roberson admitted it was a foolish mistake and stated he respected L.B. and had "no recollection of any touching in a lustful" manner. But he admitted: "I was lured by the idea of an attractive young lady talking about intimate things. I yielded to temptation. I regret my actions . . . . [L.B.] made some mistakes also. Because I'm the adult I must

5

answer for it. . . . I deeply regret my mistakes."

¶13. Evidence of two prior alleged victims was presented to the jury. The first, A.M., did not testify at trial. However, evidence of her past sexual relationship with Roberson and subsequent pregnancy and adoption of the child were introduced at trial through A.M.'s statement to Detective Rosenbaum and Roberson's oral and written statement. A.M. told Detective Rosenbaum that she and Roberson had a consensual sexual relationship from 1984-85, while A.M. was a student at Clarkdale High School. A.M. was fifteen or sixteen at the time. In his written statement, Roberson admitted to having sex in the mid-1980s with A.M. while she was babysitting Roberson's child. Roberson wrote, "She never accused or told me I was the father of her child[,] although in her statement she claims I am." In his interview with Detective Rosenbaum, Roberson stated A.M. was the aggressor in the relationship, even threatening him if he did not cooperate and have sex with her. Detective Rosenbaum reported that when asked about the pregnancy, Roberson stated that "he accepts this and should have reported it when it happened," but that he was "young, foolish[,] and scared." Roberson also told Detective Rosenbaum "that he has lived with this mistake for ma[n]y years."

¶14. K.T. testified that in 1983, while she was a student at Clarkdale High School, Roberson flirted with her and locked her in his classroom during lunch and break every day. She alleged they would kiss, touch, hug, and rub each other, and this went on from the time K.T. was fifteen until she was seventeen. She testified that one weekend, Roberson planned to go on a hunting trip with the school principal, and he told K.T. that he was going to come

back early so the two of them could meet at his house. She did not go. K.T. testified the contact stopped when he told her to meet him for sex or "get out," and she left. K.T. testified that at the time, she was Roberson's teaching assistant, and Roberson refused to give her the school credit she earned for working for him. She told her mother and the principal about Roberson's behavior, and the principal referred them to the school superintendent. The school's investigation did not result in any charges or discipline against Roberson. The matter was not reported to police. Roberson now denies K.T.'s claims, alleging that she and her mother made false accusations against him because he rejected their advances.

¶15. As part of his defense at trial, Roberson presented evidence that S.E. was out to get him because of a pregame speech he made just two days prior to her allegations. This evidence was presented through the testimonies of Roberson's daughter, Robbie Cooper, who worked as a teacher and counselor at Clarkdale High School, and two students. They testified that on Saturday, September 8, 2012, Roberson gave a speech, in which he made comments about a student who had recently been killed in an automobile accident. According to the witnesses, Roberson implied that the student's lifestyle may have led to his death and commented that some lifestyle choices have such consequences. According to the witnesses, S.E. took this as a personal attack on her lifestyle. Cooper and the two students testified S.E. was upset after the speech. One of the students testified that on Monday morning following the speech, S.E. told a group of softball players that she was going to "get" Roberson and that they "needed to have her back." The other student testified that S.E. told her that she "wasn't going to play good" at the upcoming softball games. S.E. admitted

7

that she met with some of the other softball players on the morning of September 10 and told them they needed to have her back. But she denied stating she was going to "get" Roberson. S.E. testified her statement meant she was going to tell the truth about Roberson's inappropriate behavior, and she needed their support.

¶16. Roberson also put on evidence from Dr. John Clay that he suffered from tongue cancer and would have had difficultly performing some of the accused acts. Dr. Clay testified that Roberson developed tongue cancer in 2007, and it returned in December 2010. In January 2011, Roberson had a neck dissection and his lymph nodes removed. Dr. Clay described the side effects of the chemotherapy and radiation, such as hair loss and the inability to eat. Dr. Clay testified that Roberson's surgical scar would have been visibly noticeable. Roberson was hospitalized in March 2011 for septicemia, dehydration, and malnutrition. Dr. Clay was concerned that Roberson would not survive. However, Dr. Clay testified that he could not say it was physically impossible for Roberson to have committed the crimes charged.

¶17. After the jury returned its guilty verdict, Roberson was sentenced to ten years each on Counts I and II, with the sentences to run concurrently. On Count VIII, he was sentenced to fifteen years, with thirteen years suspended and five years' probation, with this sentence to run consecutively to the sentences in Counts I and II. He was ordered to register as a sex offender and pay a $50,000 fine, with $45,000 suspended, and to pay $1,000 to the Mississippi Children's Trust Fund. Roberson's posttrial motions for a judgment notwithstanding the verdict and new trial were denied.

¶18.   Roberson appeals, raising ten issues:  (1) the trial court erred in allowing the State to constructively amend the indictment; (2) the trial court erred in not requiring the State to prove that Roberson acted with specific intent to violate the law; (3) evidence of prior bad acts was erroneously admitted; (4) the trial court erred in admitting hearsay and opinion testimony and prior consistent statements of witnesses to bolster witnesses' credibility; (5) the prosecution misused the bad-act evidence to argue propensity and improperly vouched for the credibility of its witnesses; (6) the trial court erred in denying Roberson's request to sever the indictment; (7) the trial judge made comments that skewed the evidence in favor of the State; (8) the trial court erred in denying Roberson's request for discovery of notes taken during the school board's investigation; (9) the evidence was insufficient to support Roberson's gratification-of-lust conviction on Count VIII, or, alternatively, it was so weak and contradictory that a new trial should be granted; and (10) cumulative error.

¶19.   On March 31, 2016, this Court ordered supplemental briefing on issue eight, subsection A, which argued that the trial court erred in quashing Roberson's motion for a subpoena duces tecum to the Lauderdale County School District.  In the subpoena, Roberson sought the school-board attorney's interview notes taken during the investigation of this matter, as he believed the notes might contain exculpatory material to which he was entitled. *See Brady v. Maryland*, 373 U.S. 83 (1963).  After review of the supplemental briefs, we entered an order on June 28, 2016, finding the trial court erred in quashing the subpoena without first conducting an in camera review of the interview notes.  The order remanded the matter to the trial court to conduct an in camera review and hold a hearing on whether any

9

discoverable, exculpatory material was withheld, and, if so, whether Roberson was entitled to a new trial. On October 18, 2016, the trial court entered an order finding that the interview notes contained no exculpatory material and that Roberson was not entitled to a new trial. The parties have submitted additional supplemental briefs. Roberson argues the notes were exculpatory and their suppression resulted in the denial of a fair trial. We will discuss this issue with issue eight raised above.

## DISCUSSION

### I.    Indictment

¶20.    Roberson argues that the jury instructions omitted the specific facts charged in the indictment and that this, in effect, constructively amended the indictment.

¶21.    Each count of the indictment set out the statutory basis for the charges and contained the dates and relevant factual basis for each charge. As to Count I, child exploitation, the indictment charged that in December 2010, Roberson enticed L.B. "to meet with him for the purpose of engaging in sexually explicit conduct by telling her that he had needs that needed to be fulfilled, that there were benefits to having sex with an older man, and that he could not get her pregnant." Count II charged that between February 14, 2011, and April 30, 2011, Roberson enticed L.B "to meet with him for the purpose of engaging in sexually explicit conduct by buying her chocolate candy, perfume and lotions that he wanted to rub on her body."

¶22.    However, the jury instructions for these counts do not include these specific facts. Rather, they provide dates and track the language of the charged statute. The dates are

consistent with those charged in the indictment. Instruction S-1A, the jury instruction for Count I, follows the child-exploitation statute, Mississippi Code Annotated section 97-5-33(6) (Rev. 2014), and states that if the jury finds beyond a reasonable doubt that:

1. On or about and during December, 2010, in Lauderdale County, Mississippi,

2. The Defendant, Ricky E. Roberson, did willfully, unlawfully and knowingly entice, induce, persuade, seduce, solicit, coerce and/or order [L.B.],

3. a child under the age of eighteen (18) years,

4. to meet with him for the purpose of engaging in sexually explicit conduct,

then it is your sworn duty to find [Roberson] guilty of exploitation of a child in Count I.

The instruction for Count II, S-2A, is identical, with the exception of the dates of the offense, which for Count II were between February 14, 2011, and April 30, 2011.

¶23. As to gratification of lust in Count VIII, the indictment charged that during or between June and August 2010, Roberson gratified his lust "by rubbing the inside of [S.E.'s] thigh[.]" Instruction S-8A follows the language of Mississippi Code Annotated section 97-5-23(2) (Supp. 2016) and states that if the jury finds beyond a reasonable doubt that:

1. On or about and between June 1, 2010, and August 31, 2010, in Lauderdale County, Mississippi,

2. the Defendant, Ricky E. Roberson, did willfully, unlawfully and knowingly rub, touch or handle [S.E.] with his hand or other body parts

3. for the purpose of gratifying his lust or indulging his depraved licentious sexual desires

11

4. at a time when the defendant was over the age of eighteen (18) years and [S.E.] was under the age of eighteen (18) years and not his spouse, and

5. Ricky E. Roberson then occupied a position of trust or authority over said child,

then it is your duty to find [Roberson] guilty of lustful touching of a child in Count VIII.

¶24. Roberson argues that due to the general nature of the jury instructions, reversal is warranted because he was deprived of notice of the facts for which he was convicted, and he may have been convicted on facts not charged in the indictment. Roberson objected to the instructions and proposed his own instructions, which tracked the indictment. The trial court overruled the objection and denied the proposed instructions, finding that the instructions only needed to include the legal elements.

¶25. The supreme court has explained that an impermissible constructive amendment to an indictment

> occurs when the jury is permitted to convict the defendant upon a factual basis that effectively modifies an essential element of the offense charged. A constructive amendment of an indictment is reversible per se. Reversal is automatic because the defendant may have been convicted on a ground not charged in the indictment.

*Bishop v. State*, 812 So. 2d 934, 941 (¶25) (Miss. 2002). "Not all variances between the indictment and instructions constitute a constructive amendment[.]" *Bell v. State*, 725 So. 2d 836, 855 (¶61) (Miss. 1998). As long as the change does not "materially alter facts which are the essence of the offense on the fact of the indictment as it originally stood or materially alter a defense to the indictment as it originally stood in a way that would prejudice the

12

defendant's case, then the amendment is permissible." *Miller v. State*, 740 So. 2d 858, 862 (¶13) (Miss. 1999). "[D]etermining whether the defendant is prejudiced by the amendment depends on whether a defense under the original indictment would be equally available under the amended indictment." *Givens v. State*, 730 So. 2d 81, 87 (¶20) (Miss. Ct. App. 1998). Whether an indictment was improperly amended is a question of law, which we review de novo. *Lepine v. State*, 10 So. 3d 927, 934 (¶11) (Miss. Ct. App. 2009).

¶26. Roberson does not argue that the variances between the jury instructions and the indictment modified an essential element of the crimes. Rather, he argues that the jury instructions omitted the factual basis of the crimes. The cases Roberson cites do not support his contention that this was error, as the cited cases hold that the factual basis of the indictment cannot be impermissibly altered, whereas here the concern is that the facts were omitted from the jury instructions. *See, e.g., Lester v. State*, 692 So. 2d 755, 776 (Miss. 1997) (finding the indictment was impermissibly amended during trial to change dates and add multiple battery offenses) (overruled on other grounds by *Weatherspoon v. State*, 732 So. 2d 158 (Miss. 1999)).

¶27. Both the indictment and the jury instructions followed the statutory elements of the crimes, and no facts were altered or added. The indictment gave specific notice of the essential facts, as required by Uniform Rule of Circuit and County Court 7.06,[2] and the proof at trial conformed with facts charged in the indictment. The jury instructions did not alter

---

[2] Effective July 1, 2017, the Uniform Rules of Circuit and County Court related to criminal practice were superceded by the Mississippi Rules of Criminal Procedure. Throughout this opinion, we apply the Uniform Rules of Circuit and County Court, as they were in effect at the time of Roberson's trial.

the elements of the crime in any way; nor was Roberson prejudiced or deprived of notice of the charges against him. This issue is without merit.

## II.     Specific Intent to Violate the Law

¶28.    Roberson argues that the trial court failed to require the State to prove he acted with specific intent to violate the law. Roberson argues this would have been cured by proposed jury instruction D-7, which the trial court refused as confusing. Proposed instruction D-7 reads:

> The Court instruction [sic] to the jury that the words "knowingly" and "willfully" as these terms have been used from time to time in these instructions, means that the act was committed voluntarily and purposely, with the specific intent to do something the law forbids; that is to say with a bad purpose either to disobey or disregard the law.

¶29.    "A trial judge may refuse an instruction which incorrectly states the law, is without foundation in the evidence, or is stated elsewhere in the instructions." *Blackwell v. State*, 915 So. 2d 453, 456 (¶11) (Miss. Ct. App. 2005). We review the jury instructions as a whole. *Id.* "If the instructions, read as a whole, fairly announce the law of the case and create no injustice, there is no reversible error." *Id.*

¶30.    We first note that neither statute under which Roberson was charged uses the word "willfully." Child exploitation under section 97-5-33(6) requires proof that the accused did "knowingly entice, induce, persuade, seduce, solicit, advise, coerce, or order a child to meet with [him] for the purpose of engaging in sexually explicit conduct." Gratification of lust under section 97-5-23(2) does not contain a specific mens rea requirement, such as knowingly or willfully, but requires the accused to have acted "for the purpose of gratifying

14

his . . . lust." Nonetheless, the State chose to include in the indictment charging language that Roberson "willfully, unlawfully, feloniously, intentionally[,] and knowingly" committed each crime. The jury instructions tracked this language, requiring that for each count, Roberson must have acted "willfully, unlawfully[,] and knowingly."

¶31. Roberson argues that because the indictment used the word "willfully," an instruction defining "willfully" was necessary for the jury to understand "that Roberson had to act knowing his acts were illegal." His concern is that "[b]ecause [he] admitted to many of the charged acts, the jury could have found him guilty because his acts were intentional without finding that he intended to violate the law." Roberson cites to *Renfrow v. State*, 34 So. 3d 617, 625 (Miss. Ct. App. 2009), in support of his argument. In *Renfrow*, the defendant was indicted for possession of child pornography under Mississippi Code Annotated section 97-5-33(5), which contains no mens rea requirement. *Renfrow*, 34 So. 3d at 625 (¶17). However, the indictment charged Renfrow with "willful" possession of child pornography. *Id.* at 624 (¶15). We held that "[b]y including that language, the State imposed a mens rea requirement, and it was obligated to prove that aspect of the charge beyond a reasonable doubt." *Id.* at 625 (¶19). We cannot find *Renfrow* applicable, as the indictment there charged a mens rea element not contained in the statute; whereas here, the charging statutes both contain intent requirements.

¶32. We find the trial court was correct in refusing instruction D-7 as confusing. First, we cannot find that Roberson's argument and proposed jury instruction are correct statements of the law. Under the indictment, the State was required to prove that Roberson "willfully"

committed the elements of the crimes charged, not that Roberson acted with willful intent to violate the law. *See, e.g., Lofton v. State*, 818 So. 2d 1229, 1236 (¶27) (Miss. Ct. App. 2002) (finding a jury instruction proper where it required the jury to find that the defendant's actions were "for the wilful, unlawful and felonious purpose of then and there gratifying [the defendant's] lust"). The Mississippi Supreme Court has explained, "'[u]nder the common law, proof of criminal intent is a necessary element in the prosecution of every criminal case, (except those offenses which are merely malum prohibitum).' We have stated that intent to commit a crime is not required, but rather the mere intent to commit the act is sufficient where certain acts have been enumerated unlawful by statute." *Blue v. State*, 716 So. 2d 567, 572 (¶18) (Miss. 1998) (quoting *Collins v. City of Hazlehurst*, 709 So. 2d 408, 413 (¶27) (Miss. 1997)). Thus, the language in D-7 defining "knowingly" and "willfully" as requiring "specific intent . . . to disobey or disregard the law" was misleading.

¶33.     Many courts have discouraged jury instructions attempting to define the intent required to commit a crime as confusing, and instead encouraged the use of elements instructions to set out the mental state required to commit the crime. *See* Kevin F. O'Malley, *Federal Jury Practice and Instructions*, *Criminal*, § 17:03 (6th ed. 2006). For example, in *United States v. Cano-Guel*, 167 F.3d 900, 906 (5th Cir. 1999), the United States Court of Appeals for the Fifth Circuit held that the failure to give a jury instruction defining the word "knowingly" was not error when the elements instruction set out the required mental state. Also, the Seventh Circuit Court of Appeals has held that the refusal to give a "specific intent" instruction is not error where the trial judge "adequately instructs [the jury] on the requisite

16

mental state by other means." *United States v. Arambasich*, 597 F.2d 609, 612-13 (7th Cir. 1979). In so holding, the Seventh Circuit stated: "It is not very helpful to speak of a defendant's 'purpose' to violate the law . . . . Use of the phrase 'purposely intending to violate the law' may be erroneously interpreted by jurors, for example, to require that the defendant know his act violates a criminal statute, which is ordinarily unnecessary[.]" *Id.*

¶34. Neither the criminal statutes at issue nor the indictment required proof that the defendant willfully intended to violate a criminal statute. The trial judge did not abuse his discretion in denying jury instruction D-7. The remaining instructions setting out the elements of the offenses properly instructed the jury on the law. This issue is without merit.

### III.   Prior-Bad-Act Testimony

¶35. Roberson argues that the trial court erroneously admitted A.M.'s and K.T.'s allegations of prior bad acts from the 1980s. He argues the allegations should have been excluded because they were factually distinct, too remote in time, and more prejudicial than probative.

### A.   Prior Sexual Acts with Students

¶36. Mississippi Rule of Evidence 404(b)[3] states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

---

[3] The Mississippi Rules of Evidence were stylistically revised, effective July 1, 2016. Throughout this opinion, we apply the Mississippi Rules of Evidence in effect at the time of Roberson's trial.

Evidence that is admissible under Rule 404(b) must pass the balancing test of Mississippi Rule of Evidence 403. Rule 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

¶37. "A trial judge enjoys a great deal of discretion as to the relevancy and admissibility of evidence. Unless the judge abuses this discretion so as to be prejudicial to the accused," the judge's decision to admit or exclude evidence will not be reversed. *Gore v. State*, 37 So. 3d 1178, 1183 (¶13) (Miss. 2010) (quoting *Price v. State*, 898 So. 2d 641, 653 (¶29) (Miss. 2005)).

¶38. A pretrial hearing was held on Roberson's motion in limine under Rule 404(b) to exclude evidence of K.T.'s and A.M.'s allegations. Neither testified at the hearing. Detective Rosenbaum, who led the current investigation, was unavailable; so testimony was heard from Detective Joe Boswell, an investigator with the Lauderdale County Sheriff's Department, who assisted in the investigation. The following is from Detective Boswell's testimony. In K.T.'s interview, she reported that Roberson would lock her in his classroom during lunch and breaks, sit on his desk, pull her between his legs, and rub and kiss her. He invited her to his home and other locations for sex, but she declined. She stated that he would get angry that she declined, and he gave her a lower grade in his class because she would not comply with his requests. She was fifteen years old at the time. A.M.'s statement reported that she and Roberson had a consensual sexual relationship in 1984 and 1985, which

18

resulted in a pregnancy and closed adoption of the baby. A.M. was sixteen at the time. The encounters occurred at Roberson's home while A.M. babysat his children and at John Moss Field at Clarkdale High School. She stated he would bring her home from baseball games and expect sex.

¶39. At the conclusion of the hearing on the motion in limine, the trial court held that K.T.'s and A.M.'s statements were admissible and that they could testify at trial. The judge found:

> I think those are related to inappropriate contact between a faculty member and students at the high school who are underage while they were students, while he was a faculty member. Some of those events at school; some of those away from the school property; all of them of a sexual nature and would go to motive, intent. Whether it was an accident or not and things of that nature, the touching that went on and whether it . . . would show a pattern of conduct. I think those are probative, and . . . the [m]otion in [l]imine is denied as to them.

¶40. Roberson argues K.T.'s and A.M.'s allegations did not demonstrate a pattern because the conduct was distinguishable from the instant case. Roberson asserts that unlike the instant case, there was no testimony that Roberson gave K.T. and A.M. gifts or stated that they would benefit from a relationship with an older man. Also, unlike the current victims, K.T. admitted she was infatuated with Roberson and enjoyed his attention, and A.M. admitted that their relationship was consensual. And Roberson was not K.T.'s or A.M.'s coach, although he was a teacher at their school.

¶41. In *Westbrook v. State*, 109 So. 3d 609, 612 (¶8) (Miss. Ct. App. 2014), Glenn Westbrook was found guilty of molesting a child and enticing a child for sexual purposes. The victim, a twelve-year-old boy, was Westbrook's neighbor. *Id.* at 611 (¶4). He testified

19

that Westbrook rubbed his private parts, kissed him on the cheek, and told the victim he was a former police officer. *Id.* Westbrook argued that the trial court erroneously admitted the testimony of two of his nephews that Westbrook had sexually abused them thirty to forty years prior. *Id.* at (¶3). One nephew testified that Westbrook lured him to a back room or garage and molested him numerous times from the ages of five to nine or ten. *Id.* at 615 (¶20). He testified Westbrook attempted to have anal sex with him and wanted the nephew to perform oral sex on him. *Id.* The other nephew testified that Westbrook molested and raped him on numerous occasions when he was four to five years old, and Westbrook intimidated him by saying he was a police officer. *Id.* Westbrook argued their testimony was inadmissible because the prior alleged abuse was too remote in time and did not resemble the current charges. *Id.* at 614 (¶16). Westbrook also argued the testimony was more prejudicial than probative under Rule 403. *Westbrook*, 109 So. 3d at 614 (¶16). Relying on the supreme court's findings in *Young v. State*, 106 So. 3d 775, 779-81 (¶¶17-18) (Miss. 2012), and *Gore*, 37 So. 3d at 1187 (¶20), we found the trial court did not abuse its discretion in admitting the testimony, as the testimony was admitted for the limited purpose of showing a common scheme under Rule 404(b), it was more probative than prejudicial, and a limiting jury instruction was given. *Westbrook*, 109 So. 3d at 614-16 (¶¶18-20).

¶42. In *Gore*, the defendant was charged with gratification of lust by intentionally handling, touching, or rubbing his twenty-one-month-old granddaughter. *Id.* at 1180 (¶1). Gore's adult daughter was allowed to testify that when she was twelve years old, Gore would sleep naked in bed with her and touch her inappropriately, and he would make her sit on his

lap and watch child pornography while they were both naked. *Id.* at 1183-84 (¶14). Both she and Gore's adult son testified that Gore required them to be naked at home and attend a nudist camp with him. *Id.* 1184 (¶14). The supreme court found the testimony was properly admitted under Rule 404(b). *Gore*, 37 So. 3d at 1187 (¶21). Although the acts were seven years apart, the supreme court noted that "where the competency of evidence is doubtful because of remoteness, the better practice is to admit the evidence, leaving it to the jury to determine its credibility and weight[.]" *Id.* at (¶19) (quoting *Ex Parte Register*, 680 So. 2d 225, 228 (Ala. 1994)). The supreme court also noted that the trial court provided a limiting instruction to the jury that the past behavior was not proof that he acted in conformity therewith. *Id.* at 1187 (¶21).

¶43. In *Young*, the supreme court found testimony of sexual abuse from twenty years prior admissible to show a motive "to partake in pedophilic sexual activities with young and developing female juveniles[.]" *Young*, 106 So. 3d at 780 (¶17). Again, the supreme court found that the testimony was admissible, "[b]ecause this evidence was properly admitted under Rule 404(b), filtered through Rule 403, and accompanied by an appropriately-drafted limiting or cautionary instruction to the jury[.]" *Young*, 106 So. 3d at 780 (¶18).

¶44. Here, the trial court found that K.T.'s and A.M.'s statements were relevant under Rule 404(b) because the alleged inappropriate contact occurred between Roberson and underage students while the students were in high school where he was a faculty member and some of the conduct in both instances occurred on school property. The trial court gave a limiting instruction, D-3A, which stated in part:

21

As to any of these alleged prior acts between [Roberson and K.T. and Roberson and A.M.], you may consider the evidence only for the limited purposes of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident on the part of . . . Roberson on the acts after December 1, 2010. However, you are cautioned that you cannot and must not consider this as evidence to simply infer that . . . Roberson acted in conformity with his previous acts, and that he is guilty of the charges of child exploitation and lustful touching in relation to [S.E. and L.B.] and for which he is presently on trial.

¶45. We find that the trial court properly admitted the evidence of prior sexual acts for a limited purpose under Rule 404(b), and that the trial court considered that the probative value of the evidence was not substantially outweighed by unfair prejudice under Rule 403. Also, the trial court provided an appropriate limiting instruction. Again, the "trial judge enjoys a great deal of discretion as to the relevancy and admissibility of evidence." *Gore*, 37 So. 3d at 1183 (¶13). The trial court found the prior bad acts sufficiency similar to the current charges to be admissible under Rule 404(b), and his findings are supported by the record. As such, we cannot find the trial court erred in admitting the evidence at trial. This issue is without merit.

### B.     Evidence of Pregnancy and Adoption

¶46. Within his argument that K.T.'s and A.M.'s statements were inadmissible prior-bad-act testimony, Roberson argues specifically that the State inflamed the jury with testimony of A.M.'s pregnancy and Roberson's failure to inquire if he was the baby's father. Roberson points to the State's questioning of his wife, Lynn Roberson, and argues it served no purpose other than to suggest Roberson was a bad person. Her testimony on cross-examination regarding this issue is as follows:

22

Q. When was the first time you learned about [A.M.]? Was it back then or was it now?

[DEFENSE COUNSEL]: We object on relevancy, Your Honor.

BY THE COURT: Overruled.

BY THE WITNESS: I have known about [A.M.] ever since [A.M.] babysat for us.

. . . .

Q. Okay. And did you know about her pregnancy?

A. Yes. She had many, many close boyfriends.

Q. So you don't believe that [Roberson] is the father?

A. No, from what she said back then.

Q. Did he ever make any attempts to determine whether he had a daughter?

[DEFENSE COUNSEL]: We object on relevancy.

BY THE COURT: Overruled. I think that's the question, though. He has got, what, at least three daughters with her, doesn't he?

[PROSECUTION]: Yes, sir. I'm talking about [A.M.]'s daughter.

BY THE COURT: Well, you need to ask that question.

[PROSECUTION]: Yes, sir.

. . . .

Q. Did he ever make any attempts to determine whether [A.M.]'s daughter was his daughter?

A. [A.M.] said it was not.

[DEFENSE COUNSEL]: Object to this, Your Honor. Object on relevancy grounds.

23

BY THE COURT:  I'm going to allow the question, if you know.

. . . .

Q.  My question was:  Did you find out about [A.M.] back then, or are you finding out about it now?

A.  I told you I knew [A.M.] then.  She was not a regular babysitter, but at times when I had classes, maybe once she did babysit for us once.

Q.  Did you find out they were—

A.  I knew she was pregnant, and I knew that—yes, I know what happened. I don't see how this is relevant to this case.  It has nothing to do with this case. I don't know why I have to answer that.

. . . .

Q.  Did y'all separate over [A.M.]?

A.  No.

¶47.  The pregnancy and adoption were mentioned during various other parts of the trial. The jury was told as early as voir dire that A.M. became pregnant by Roberson in the 1980s, and that she had given the baby up for adoption.  No objection was made.  K.T. testified she had told A.M. to stay away from Roberson, but A.M. did not.  The prosecutor asked K.T. how she knew A.M. did not stay away from him, and she responded that A.M. "came back and told [her] she was pregnant."  Roberson's hearsay objection was overruled.  The prosecutor then withdrew the question.  Roberson also objected to Detective Rosenbaum's testimony that the investigators "had information that showed that a child resulted from one of his relationships with one of his students, but it was [their] understanding that this child was 20 some-odd years old now, had been adopted out, had no idea that she had been—[.]"

24

The testimony was interrupted, and the hearsay objection was sustained.

¶48. During closing arguments, the prosecutor stated: "[K.T.] warned [A.M.] to stay away from . . . Roberson. [A.M.] told her it was too late, she was already pregnant." Roberson objected on the basis that no such testimony was presented. The trial court allowed the argument, stating, "As I instructed the jury, this is argument. If you feel like their argument is not supported by the evidence, then you may disregard."

¶49. During oral arguments heard in this appeal, the State admitted that the testimony regarding the pregnancy and adoption was irrelevant. However, the State argues the error was harmless. The State also argues that Roberson cannot complain of the hearsay testimony regarding the pregnancy because it was already before the jury through Roberson's own oral and written statements to Detective Rosenbaum. Detective Rosenbaum was the first witness to testify at trial. In a six-page handwritten statement, which was admitted at trial without objection, Roberson discussed the child: "[A.M.] never accused or told me I was the father of her child[,] although in her statement she claims I am." And he told Detective Rosenbaum that "he has lived with this mistake for ma[n]y years." The State argues that any other testimony regarding this evidence was cumulative, and it was not prejudicial.

¶50. While we find evidence of Roberson's prior sexual relationship with A.M. admissible under Rule 404(b) as addressed above, we find no basis for the admissibility of the testimony regarding A.M.'s pregnancy and the subsequent adoption of the child, as it was not relevant to any issue at trial. "'Relevant Evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable

25

or less probable than it would be without the evidence." M.R.E. 401. "All relevant evidence is admissible," except as otherwise provided by law. M.R.E. 402. "Evidence which is not relevant is not admissible." *Id.*

¶51. Nonetheless, Roberson admitted to having sex with A.M., and Roberson admitted in his statement to police that he knew A.M. claimed he was the father of the child. Roberson did not object to the introduction of the statement at trial. We acknowledge that Roberson did file a motion in limine to exclude all wrongdoing as to A.M. Specifically, Roberson moved to prohibit the State and its witnesses from "mentioning, inferring, alluding to or in any way implying any alleged wrongdoing on the part of [Roberson]" with regard to A.M. However, once that motion was denied, Roberson did not narrow his request to exclude only evidence of the pregnancy or adoption at trial; nor did he at any time move to redact the portion of his statement that A.M. believed him to be the father of the child. This issue is now procedurally barred, as the failure to object acts as a waiver on appeal. *Jackson v. State*, 174 So. 3d 232, 236 (¶11) (Miss. 2015).

¶52. Unless the judge abuses his discretion so as to prejudice the accused, the Court will not reverse his ruling. *Gore*, 37 So. 3d at 1183 (¶13). Given the evidence presented at trial against Roberson, we cannot find that Roberson was unfairly prejudiced by the introduction of the pregnancy and adoption, especially considering the first evidence of the pregnancy came in through Roberson's own statements. Further, we cannot find the trial court erred in allowing evidence of the pregnancy and adoption when there was no specific objection to its inclusion after the motion in limine seeking to exclude all evidence of wrongdoing as to

26

A.M. was denied. This issue is without merit.

### IV. Admission of Hearsay, Opinion Testimony, and Prior Consistent Statements

¶53. Roberson argues that throughout the trial, the State was erroneously allowed to introduce hearsay testimony, opinion testimony, and prior consistent statements to bolster its witnesses.

#### A. Hearsay

¶54. "'Hearsay'" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." M.R.E. 801(c). Hearsay is inadmissible except as provided by law. M.R.E. 802.

¶55. Roberson argues the most egregious hearsay was Detective Rosenbaum's and the other witnesses' testimony regarding A.M.'s pregnancy and subsequent placing of the baby for adoption. He argues the testimony violated the Confrontation Clause. "[T]he Confrontation Clause bars the admission of testimonial hearsay unless the witness is unavailable and the defendant had a prior opportunity for cross-examination." *Hingle v. State*, 153 So. 3d 659, 662 (¶7) (Miss. 2014) (citing *Crawford v. Washington*, 541 U.S. 36 (2004)). "Generally, testimony is a 'solemn declaration or affirmation made for the purpose of establishing or proving some fact.'" *Id.* (quoting *Crawford*, 541 U.S. at 68).

¶56. A.M.'s statement that Roberson fathered her baby was admitted by Roberson in his statements to police, which were introduced into evidence without objection. Thus, the only new information in A.M.'s statement was that the child was put up for adoption. Roberson moved in limine to prohibit the introduction of any alleged wrongdoing with regard to A.M.

27

However, as stated above, once that motion was denied, Roberson did not specifically move to exclude evidence of the pregnancy or adoption, or to redact the portion of his statement that A.M. believed him to be the father of the child. A.M. did not testify at trial, nor was there a prior opportunity for cross-examination.

¶57. Roberson cites *Bell v. State*, 928 So. 2d 951 (Miss. Ct. App. 2004), in support of his argument that a Confrontation Clause violation occurred that deprived him of a fair trial. In *Bell*, police questioned two girls, ages four and five, about the events surrounding a murder. *Id.* at 953, 960 (¶¶2, 38). The girls did not testify at trial and were not subject to cross-examination, but their responses were relayed by numerous police officers at trial. *Id.* at 960 (¶38). No other eyewitness testimony was presented by the State, and the defendant testified in his own defense, denying that he committed the murder. *Id.* Based on these facts, this Court found a Confrontation Clause violation, which could not be found to be harmless error, and reversed and remanded for a new trial. *Id.* at 961 (¶38).

¶58. Here, we cannot find such a grave violation warranting reversal. While A.M.'s statement was taken as part of a police investigation, it did not go to the crime itself. A.M. had no knowledge of the current crimes; rather, she gave a statement of her experience with Roberson in the 1980s. The two victims testified against Roberson. "Any error in the admission or exclusion of evidence is not grounds for reversal unless the error adversely affected a substantial right of a party." *Id.* at 958 (¶31). We find the admission of the statement did not affect a substantial right. Thus, we cannot find reversible error under the Confrontation Clause.

¶59. As found above, although the pregnancy was irrelevant to the current charges and should have been excluded, had it been specifically disputed in a timely manner, it was not unduly prejudicial, given the weight of the evidence against Roberson and Roberson's own statement that he had sex with A.M., she became pregnant, and she believed him to be the father of the baby. The only new evidence introduced through A.M.'s statement was the adoption. Roberson never specifically objected to the introduction of the testimony regarding the adoption; and, even if he had, we cannot find the introduction of this testimony was unduly prejudicial in light of the fact that evidence of the pregnancy came in through Roberson's own statement. The sexual molestation was the most damaging evidence with regard to A.M.'s statement. The pregnancy and adoption were consequences thereof. This issue is without merit.

### B. Opinion Testimony

¶60. Mississippi Rule of Evidence 701 states:

> If the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to the clear understanding of the testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge[.]

"[A]n opinion by one witness as to another's veracity is 'generally inadmissible.'" *Woods v. State*, 973 So. 2d 1022, 1026 (¶10) (Miss. Ct. App. 2008) (quoting *Smith v. State*, 925 So. 2d 825, 838-39 (¶32) (Miss. 2006)).

¶61. Roberson gives four examples of what he alleges is improper opinion testimony. First, a student, S.W., testified that S.E. confided in her that Roberson had inappropriately

29

touched her. The prosecutor then asked, "Did she appear truthful to you?" Roberson's objection on the ground that the question called for a conclusion as to her truthfulness was overruled. S.W. then answered, "I believe she was truthful and honest." Second, Detective Rosenbaum, over objection, was allowed to state that Roberson's statements during the investigation were consistent with the victims' statements. Third, K.T.'s mother testified that when she reported Roberson's conduct to the principal, the principal stated, "I'm surprised. I taught that old boy." Roberson's hearsay objection was overruled. Fourth, K.T. testified that when she told the principal the allegations, specifically that Roberson stated he would come home early from a hunting trip with the principal to meet her at his house, the principal "believed [her]." The objection to this testimony was sustained.

¶62. We need not discuss the fourth example, since the hearsay objection was sustained, and the trial judge was not requested to instruct the jury to disregard the statement. *See McGowan v. State*, 706 So. 2d 231, 243 (¶46) (Miss. 1997) ("[W]here an objection is sustained, and no request is made that the jury be told to disregard the objectionable matter, there is no error."). As to Detective Rosenbaum's testimony, he was not asked whether the victims' statement were truthful; rather, he was asked whether their allegations were consistent with Roberson's statement. Also, K.T.'s mother's testimony that the principal was "surprised" at the allegations did not go toward or against any witness's credibility. We cannot find either of these were improper opinion testimony.

¶63. As to S.W.'s testimony on direct examination that she believed S.E.'s statement to her that Roberson had inappropriately touched her was "truthful and honest," we find this was

30

improper opinion testimony as to S.E.'s veracity. In *Woods*, 973 So. 2d at 1026 (¶9), the State asked several witnesses in its case-in-chief to opine whether the victims were telling the truth as to statutory-rape allegations against the defendant. We found that "the trial court properly sustained Woods's objections to the State's attempt to elicit opinions on the truthfulness of [the victims'] statements from various other witnesses." *Id.* at (¶10). The reason for the general exclusion of this testimony is that "[o]pinion testimony as to a witness's truthfulness is of dubious competency." *Id.* (quoting *Williams v. State*, 539 So. 2d 1049, 1051 (Miss. 1989)). Likewise, in *Rose v. State*, 556 So. 2d 728, 733 (Miss. 1990), the supreme court found that a sheriff impermissibly testified that Rose's codefendants were truthful. In finding reversible error, the supreme court emphasized the "very real danger that, due to his position as sheriff, he might unduly influence the jury when the time came to evaluate the testimony of the co-defendants." *Id.* The court also pointed out that the jury must determine the truthfulness of witnesses. *Id.*

¶64. Although S.W.'s testimony was improper opinion evidence, we find its admission harmless error. In deciding whether the admission of testimony is harmless error, the appellate court "must determine whether the weight of the evidence against the defendant is sufficient to outweigh the harm done by allowing admission of the evidence." *Veasley v. State*, 735 So. 2d 432, 437 (¶17) (Miss. 1999). First, S.W. was S.E.'s classmate, not a law-enforcement officer. Thus, the concern raised in *Rose* of the unduly influential nature of the testimony is not present here. *See Rose*, 556 So. 2d at 733. Further, Roberson has not shown harm from the admission of S.W.'s testimony, given the weight of the evidence against him

31

and his own admissions. Thus, we find the admission of S.W.'s testimony was harmless error. As stated, the remaining arguments raised under this issue are without merit.

## C.    Prior Consistent Statements

¶65. Mississippi Rule of Evidence 801(d)(1)(B) states:

> A statement is not hearsay if . . . [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive[.]

However, for this rule to apply, "the consistent statements must have been made prior to the arising of the alleged motive to fabricate." *Owens v. State*, 666 So. 2d 814, 817 (Miss. 1995).

¶66. Roberson argues that S.E. became motivated to fabricate the abuse allegations after his pregame speech, which he asserts she took as a personal attack on her lifestyle. Thus, he argues that testimony regarding S.E.'s allegations of abuse after Roberson's pregame speech was inadmissible. Roberson gives one example of testimony that should have been excluded: S.W.'s testimony that after the speech S.E. confided in her that Roberson had inappropriately touched her. A hearsay objection to this testimony was overruled. Prior to S.W.'s testimony, S.E. had been questioned on cross-examination about the speech. She was asked whether the speech made her mad, and defense counsel pointed out that she did not report the allegations until after the speech.

¶67. In *Owens*, 666 So. 2d at 816, a law-enforcement officer testified regarding statements made to him by the victim that the defendant had fondled her. Prior to his testimony, the defendant had pursued a line of questioning that implied the victim had a motive to lie

32

because she was jealous of the defendant's relationship with another female. *Id.* Thus, although the victim testified at trial, the supreme court found the law-enforcement officer's testimony was inadmissible under Rule 801(d)(1)(B). *Owens*, 666 So. 2d at 817. However, the supreme court went on to find the error was harmless, given the weight of the evidence against the defendant and the defendant's admission that he had touched the victim "in the wrong place and that he was sorry." *Id.*

¶68. We likewise find any error here to be harmless. First, while Roberson made a hearsay objection, he did not argue that the evidence should be excluded as an inadmissible prior consistent statement. Further, the jury heard S.E.'s testimony that Roberson touched her inappropriately, and that she had told S.W. about it. And they heard Detective Rosenbaum's testimony that Roberson had admitted some of the allegations and apologized for any harm caused. S.W.'s testimony was cumulative of S.E.'s testimony, and we find its admission harmless error given the weight of the evidence against Roberson.

## V. Prosecutorial Misconduct

¶69. Roberson argues he was denied a fair trial because the prosecution misused the bad-act evidence to argue propensity, improperly vouched for the credibility of its witnesses, and relied on improperly admitted hearsay to bolster the credibility of its witnesses.

¶70. First, Roberson argues that the State improperly implied that because Roberson had molested A.M. and K.T., he was a bad person and sexual predator. Roberson also argues that the State's reliance on A.M.'s pregnancy and the adoption to argue Roberson's bad character was error. Roberson cites to the State's cross-examination of his wife, Lynn, which is quoted

above, in support of his argument. He argues that in closing, the prosecutor was improperly allowed to state that Lynn's anger at his mentioning A.M. was misdirected, and that it should instead have been directed at Roberson. Also, he cites to the prosecutor's closing argument that Roberson was a "child predator" and that his current actions were "a calculated risk on his part, but he had done it before with no consequences and this time he might be dying. Why not give it a shot?"

¶71. Further, Roberson argues that the prosecutor impermissibly expressed his opinions in closing. For example, the prosecutor stated that the victims were truthful, the "good old boy network" protected Roberson against K.T.'s allegations, and K.T. "never got closure for his acts." The prosecutor stated that the fact that Roberson did not remember kissing K.T., "to me" (the prosecutor), "means it happened." Finally, the prosecutor stated: "Poor . . . Roberson. He has lived with this mistake of getting his 16-year-old student pregnant for years."

¶72. Next, Roberson argues the prosecutor implied the molestation would continue if Roberson were not convicted. The prosecutor stated: "If nothing else good can be the result of the [student's death in the vehicle accident] but the fact that a sexual predator was exposed and removed from Clarkdale school, then I hope there is comfort in that for those who knew him and mourn him. The fox is no longer guarding the henhouse." Also, the prosecutor repeated Detective Rosenbaum's testimony that Roberson told him that he was expecting "them"—other girls—to come forward. The prosecutor then stated, "So you are left wondering, how many more were there, how many more that didn't come forward?" And,

"if [S.E.] had not come forward, who would be in his office today? Who would be sitting here right now[?] . . . S.E. is a hero." The prosecutor continued, "thank goodness he is not out there at school today. Thank you, [S.E.]"

¶73. Roberson made only one objection during closing arguments. It was to the prosecutor's statement that when K.T. warned A.M. to stay away from Roberson, A.M. "told her it was too late, she was already pregnant." Roberson objected on the basis that there was no testimony to support this statement. The trial court overruled the objection, stating that the jury could determine what was supported by the evidence. We find no error in the trial court's doing so, as K.T.'s testimony was in evidence.

¶74. Roberson did not object to any of the other complained-of comments made in closing. "[F]ailure to object contemporaneously at trial waives any claim of error on appeal." *Gillett v. State*, 56 So. 3d 469, 520 (¶150) (Miss. 2010). We may only "review such a claim if the prosecutor's statement was so inflammatory that the trial judge should have objected on his own motion." *O'Connor v. State*, 120 So. 3d 390, 399 (¶26) (Miss. 2013). With regard to the latitude given to a prosecutor's closing argument, the supreme court has held:

> Trial counsel is granted wide latitude during closing argument. The court cannot control the substance and phraseology of counsel's argument; there is nothing to authorize the court to interfere until there is either abuse, unjustified denunciation, or a statement of fact not shown in evidence. To constitute a due process violation, the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial.

*Grayson v. State*, 118 So. 3d 118, 139 (¶60) (Miss. 2013) (citation omitted).

¶75. We cannot find the prosecutor's comments were so inflammatory that the judge should have intervened, sua sponte. While some of the prosecutor's statements, had they

35

been objected to, may have been found impermissible, we cannot say that the statements were "so inflammatory" that the judge should have intervened or "of sufficient significance to result in the denial of the defendant's right to a fair trial." *Id.*

¶76. We find this issue is procedurally barred and, alternatively, without merit.

## VI. Severance of Counts

¶77. Roberson argues that the counts should have been severed into three trials, one each for the three alleged victims. He argues he was prejudiced by the admission of unrelated instances of sexual misconduct.

¶78. Uniform Rule of Circuit and County Court 7.07 states:

A. Two (2) or more offenses which are triable in the same court may be charged in the same indictment with a separate count for each offense if: (1) the offenses are based on the same act or transaction; or (2) the offenses are based on two (2) or more acts or transactions connected together or constituting parts of a common scheme or plan.

B. Where two (2) or more offenses are properly charged in separate counts of a single indictment, all such charges may be tried in a single proceeding.

*See also* Miss. Code Ann. § 99-7-2(1)-(2) (Rev. 2015). Factors to consider are "(1) the time period between the offenses, (2) whether the evidence proving each count would be admissible to prove each of the other counts, and (3) whether the crimes are interwoven." *Richardson v. State*, 74 So. 3d 317, 324 (¶22) (Miss. 2011). The State bears the burden of proving the counts should not be severed. *Id.* The denial of a motion to sever a multicount indictment is reviewed for abuse of discretion. *Id.* at 323 (¶21).

¶79. The seven counts for which Roberson was tried occurred between December 2010 and

36

August 2012. The State argued that although each count had its own elements of proof, some of the elements were repetitive, such as that many of the acts occurred on school property while Roberson was employed there, and the victims were players on the softball team that he coached. In denying the motion to sever, the trial court stated:

> I think we're dealing in each of the eight counts here with the allegation of inappropriate contact in one form or another between a coach and students that are being coached; five different counts dealing with inappropriate touching and others dealing with—three counts dealing with exploitation in one form or another between the same coach and different students at different times. . . . I think clearly the verbiage in . . . each of the counts is sufficient to notify Mr. Roberson that . . . we're dealing with inappropriate contact between him in his position as coach and an adult with a person that is a student at the time and under his supervision as their coach. I think that's [a] sufficient connection if proven to justify—or to meet the requirements of criminal proceeding code and the rule.

¶80. In *Broderick v. State*, 878 So. 2d 103, 104-05 (¶2) (Miss. Ct. App. 2003), James Broderick was tried on a four-count indictment involving inappropriate sexual contact with two minor female relatives between March 1998 and August 2000. One count charged sexual battery and one count charged lustful touching of one victim, and the remaining two counts charged sexual battery of a second victim. *Id.* The trial court found that the charges were properly brought together because the two victims accused Broderick of the same type of misconduct, and Broderick used the same scheme to sexually molest the girls. *Id.* at (¶7). The trial court made it clear that the jury would be instructed to find and return each verdict separately. *Id.* at (¶8). We found no abuse of discretion. *Id.*

¶81. In *Armstead v. State*, 978 So. 2d 642, 648 (¶49) (Miss. 2008), the supreme court held that multiple counts did not need to be severed on the basis that evidence in one count would

not be admissible as to the other count if the two were tried separately. The court stated:

> There is no authority for restricting the multi-count-indictment statute because some element of proof necessary as to one charge would be inadmissible on another charge if tried separately. Whenever a defendant is tried on a multi-count indictment, the possibility that a jury will infer guilt on all counts from guilt on one individual count does not warrant reversal so long as the jury is instructed that each count must be considered separately, and each count is supported by substantial evidence and proven beyond a reasonable doubt.

*Id.*

¶82. We cannot find the trial court abused its discretion in denying the motion to sever. Like in *Broderick*, there was a common scheme or plan, in that Roberson engaged in similar behavior with members of the girls' softball team he coached, and the acts occurred over a similar time span, approximately two years. Also, the jury was instructed to return each verdict separately, and each count was supported by substantial evidence. This issue is without merit.

### VII. Judge's Comments

¶83. Roberson argues the trial judge impermissibly commented on the testimony and weight of the evidence. We "will not hesitate to reverse where the trial judge displays partiality, becomes an advocate, or, in any significant way, conveys to the jury the impression that he has sided with the prosecution." *Jones v. State*, 669 So. 2d 1383, 1387 (Miss. 1995).

¶84. Roberson points to seven comments made by the judge. No objection was made to any of the comments. Failure to object to a judge's allegedly improper comments at trial waives the issue for appeal. *McDowell v. State*, 984 So. 2d 1003, 1023 (¶82) (Miss. Ct. App. 2007). Nonetheless, we have carefully reviewed the comments and find no error. Instances

where Roberson alleges that the judge bolstered or emphasized testimony of the State's witnesses or cut off questioning by the defense appear to be the judge's attempt to clarify counsel's questions or stop repetitive questioning.

¶85. For example, after S.E. was asked repeatedly by defense counsel about the dates of a softball camp, defense counsel asked, "And you are as positive of that as you are of everything else you have said; is that right?" The State objected to relevancy, and the trial court stated: "She has sworn under oath . . . that it happened after she came back. That's her recollection. She is sworn to tell the truth." Roberson argues that the judge was implying that S.E. was telling the truth, but this argument is not supported by the record. Rather, the judge simply pointed out that S.E. had given her testimony, that she was sworn to tell the truth, and that further questioning on the matter was unnecessary.

¶86. The same is true for the judge's comment after S.E. was repeatedly asked why she testified at trial that Roberson wanted her to wear lacy panties for him but failed to include this in any written statement. Upon Roberson's objection, the trial court stated, "you know, sometimes you remember things at different times. . . . [T]hat's the way it is. . . . [D]o . . . you [(S.E.)] understand [you have] a responsibility to tell the truth and the whole truth . . . ? . . . I'm going to allow her to tell the truth and the whole truth as she recalls it." There is no evidence the judge was attempting to minimize S.E.'s failure to include this allegation in her written statement. Rather, it appears the judge was trying to end repetitive questioning on the matter.

¶87. This issue is procedurally barred and, alternatively, without merit.

## VIII.  Right to Present a Defense

### A.  Statements Taken in School-Board Investigation

¶88.  Prior to trial, Roberson filed a motion for a subpoena duces tecum, seeking the school district to produce a "copy of all statements, evidence, documents, papers, reports, investigative reports, and other such tangible information which was generated or the result of any investigation by the school district . . . regarding the specifics and/or subject matter of the indictment."  The motion stated that Roberson had requested this information from the State in discovery, but the district attorney advised him that all such documents were in the possession of the school board's attorney, John Compton.  The motion also stated that, on information and belief, the material might be exculpatory and/or discoverable under *Brady*.  The district attorney approved an agreed order for the issuance of the subpoena.  The court granted Roberson's motion, and the subpoena was issued.

¶89.  The school district filed a one-page objection to the motion, arguing that the interview notes were protected by either attorney-client privilege and/or the attorney-work-product doctrine.  This was the school district's only written objection to the subpoena.[4]  The school district provided no description of the documents in Compton's possession.

¶90.  Roberson then moved to show cause, and the circuit court held a hearing on the motion.  At the hearing, the school district argued that it could not be required to turn over anything other than a list of witnesses who were interviewed, "because everything else in the

---

[4] *See* M.R.C.P. 45(d)(2)(B) (requiring written objections to subpoenas duces tecum); URCCC 2.01(A) ("Except as set forth below, the procedures for subpoenas in both civil and criminal matters shall conform to Rule 45 of the Mississippi Rules of Civil Procedure.").

file would have been Compton's mental impressions of the statements made by the various witnesses or [a] memorandum that he . . . sent to the [school district's] liability carrier." Roberson responded that he did not want the memorandum, but only the interview notes. Roberson argued that the interview notes may contain exculpatory information that he was entitled to discover, as he was not terminated after Compton's investigation. Roberson alternatively requested that the court review the documents in camera for exculpatory information.

¶91. The school district responded that its investigation "had nothing to do with any criminal investigation, and none of [its] information was turned over to the Sheriff's Office or the DA's Office."[5] Rather, the district asserted for the first time that the interview notes were privileged under the Family Educational Rights and Privacy Act (FERPA). *See* 20 U.S.C. § 1232g (2012). Roberson argued that his right to exculpatory information outweighed any such privilege. The prosecutor, who had taken no position on the motion, then stated: "Based on the representations of the attorneys for the School Board, we're not going to seek any of [the requested information] because they have said that it's privileged under Federal law, another statute with which I'm not familiar; but I'll take their word for it."

¶92. Following the prosecutor's comments, the court agreed that FERPA protected the notes. The court found no *Brady* violation because the district attorney's office did not have

---

[5] If, under the circumstances, it would have been "reasonable" for the school district "to suspect that a sex crime against a minor ha[d] occurred," then the school district was required by law to report all "pertinent information" to law enforcement or the Department of Human Services. Miss. Code Ann. § 97-5-51(2)-(3) (Rev. 2014).

the notes and the witnesses were available for Roberson to interview. The trial court did not review the documents.

¶93.     In Roberson's initial appellate brief, he argued he could not adequately present his defense because he was denied access to potentially exculpatory evidence in the interview notes. He reasoned that the school's decision not to fire or take legal action against him led "to the inescapable conclusion that there was exculpatory information in the interviews." *See Brady*, 373 U.S. at 83. We review a trial court's ruling on discovery matters for abuse of discretion. *Jenkins v. State*, 131 So. 3d 544, 547 (¶10) (Miss. 2013).

¶94.     Concerned with a possible *Brady* violation, this Court ordered supplemental briefing on this issue. After review of the supplemental briefs, we determined that the trial court had indeed erred in failing to conduct an in camera review of the notes. As the trial court had not reviewed the notes or made the notes part of the record, the notes were not available for this Court to review. Without knowing what was contained in the notes, we determined we could not find quashing the subpoena to be harmless error. We further found that "to the extent the notes contain exculpatory information, neither [FERPA] . . . nor the work-product doctrine provides a valid basis for withholding the notes." The interviewee list provided to Roberson was not a sufficient alternative to the notes, as locating and interviewing all witnesses previously interviewed was an undue hardship, when the interview notes were readily available for in camera review by the judge. *See* M.R.C.P. 26(b)(3). Based on this conclusion, we remanded the case to the trial court for the limited purposes of conducting an in camera review of the interview notes and holding a hearing on whether Roberson should

42

be granted a new trial.

¶95. On remand, the trial court conducted an in camera review of the interview notes and found no exculpatory material, evidence of bias, or impeachment evidence. The trial court allowed the parties to review the notes, after which Roberson requested a hearing. Compton testified at the hearing, and the interview notes and a "Memo to File" were admitted into evidence. A five-page handwritten statement by S.E., which was faxed to the Lauderdale County Sheriff's Department after Roberson's reinstatement, was admitted for identification only. At the conclusion of the hearing, the trial court held that no evidence had been presented that would "undermine confidence in the outcome of the trial." The trial court found that considering the weight of the evidence against Roberson, its error in quashing the subpoena was harmless. The trial court then denied Roberson's motion for a new trial. The parties have filed additional supplemental appellate briefs from the trial court's ruling.

¶96. Roberson argues that the suppression of the notes was not harmless because the notes prove that S.E. "embellished" her allegations at trial. Roberson points out that the notes reflect that S.E. told Compton that Roberson touched her thigh, but at trial S.E. more specifically stated that Roberson touched her outer thigh and then rubbed her inner thigh an inch and a half below her crotch. Roberson argues there was no indication in S.E.'s statement to Compton "that Roberson's touching her thigh was sexual," and mere touching without lustful intent is insufficient to form a crime. Roberson argues that the evolution of S.E.'s allegations is material because the trial hinged on S.E.'s credibility as a witness. He also argues that S.E.'s statements to Compton would have affected the jury's view on L.B.'s

43

credibility as well, as part of his defense was that S.E. enlisted L.B.'s help to make false claims against Roberson. Roberson also points out that he learned at the hearing that S.E. had received a settlement from the school, and he argues this was also a *Brady* violation.

¶97. "[T]he suppression of favorable evidence is a violation of the defendant's due process rights. Favorable evidence includes that which is either directly exculpatory or items which can be used for impeachment purposes." *Manning v. State*, 929 So. 2d 885, 890-91 (¶13) (Miss. 2006) (citing *Brady*, 272 U.S. at 87). To receive a new trial based on the suppression of evidence, the defendant must show:

> (a) that the State possessed evidence favorable to the defendant (including impeachment evidence); (b) that the defendant does not possess the evidence nor could he obtain it himself with any reasonable diligence; (c) that the prosecution suppressed the favorable evidence; and (d) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different.

*Id.* at 891 (¶15). "[N]ot all failures to disclose exculpatory evidence constitute reversible error. Rather, the question is whether there is a 'reasonable probability' that the verdict would have been different but for governmental evidentiary suppression which 'undermines confidence in the outcome of the trial.'" *Carr v. State*, 873 So. 2d 991, 999-1000 (¶12) (Miss. 2004) (quoting *Kyles v. Whitley*, 514 U.S. 419, 434 (1995)).

¶98. While Compton's notes are not as detailed as the trial testimony, the notes and trial testimony are consistent. The notes do not prove Roberson's innocence or discredit any witnesses. Compton explained at the hearing that his interviews were cursory because they were not conducted as part of a criminal investigation or in anticipation of a lawsuit. Rather, the interviews were conducted to determine if Roberson should be fired. Compton "felt there

44

was enough to terminate [Roberson]" based on the limited information gathered. Compton stated that Roberson's "rubbing [a student's] inner thigh was enough for him." And it did not matter to Compton how Roberson kissed S.E. or how many times, as it was improper for a teacher to kiss a student. Compton testified that a letter of termination was prepared, but, despite his recommendation, the superintendent allowed Roberson to return to work. Compton testified, "political pressures overcame my recommendation." Compton further testified, once "the [s]uperintendent chose to put Mr. Roberson back to work, . . . I felt like I was not needed to go any further."

¶99. We cannot find a reasonable probability exists that the information contained in Compton's interview notes or revealed at the hearing, had it been disclosed to Roberson, would have changed the outcome of Roberson's trial. The interview notes contained no new information, and Compton explained that the interview notes were lacking in detail because he believed the information provided was sufficient to terminate Roberson. This argument is without merit.

¶100. Also, it is unclear how evidence that the school may have reached a settlement with S.E. demonstrates a *Brady* violation. Roberson argues that had he known S.E. "benefitted financially from a specific claim, this would have provided a significant additional ground for impeachment of her testimony." This issue was not raised before the trial court; thus, it is being reviewed for the first time on appeal. The only case cited by Roberson for this argument is *Banks v. Dretke*, 540 U.S. 668, 695-96 (2004). In *Banks*, the defendant was found to have shown cause for a *Brady* violation because the prosecution failed to disclose

45

that one of the witnesses was a paid informant. *Id.* The court found the paid informant was a key witness, the fact that he was "a paid informant was unquestionably 'relevant,'" and the disclosure of this information would have helped the defense. *Id.* at 698. Here, though, there is no claim that the State knew of the settlement. Further, it is unclear how evidence of the settlement was material or relevant to Roberson's criminal trial, and it is questionable whether disclosure of the settlement to the jury would have helped Roberson's defense. In fact, it implies that the claim against Roberson was meritorious. We likewise find this argument without merit.

### B. Past Sexual Behavior of Victims

### 1. Victims' Sexual Orientation

¶101. Prior to trial, the State filed a motion in limine under Mississippi Rule of Evidence 412 to exclude any reference to S.E. and L.B. as lesbians. The trial court granted the motion. Roberson argues the exclusion of this evidence deprived him of the right to present his defense, as it related to the victims' bias against him.

¶102. Roberson states that, in his pregame speech made two days before S.E. came forward with the allegations against him, he criticized the lifestyle of a homosexual student who had recently died in a vehicle accident and suggested that his lifestyle led to his death. Roberson argues that S.E. took his speech as a personal attack on her lifestyle, since she was also homosexual. Roberson argues that S.E., based on her belief that he was decrying her lifestyle, accused him of sexual abuse as revenge for his comments, and that she enlisted L.B.'s help to do so.

46

¶103. "The purpose of Rule 412 is to prevent the introduction of irrelevant evidence of the victim's past sexual behavior to confuse and inflame the jury into trying the victim rather than the defendant." *Galloway v. State*, 122 So. 3d 614, 668 (¶177) (Miss. 2013). Rule 412 states: "Notwithstanding any other provision of law, in a criminal case in which a person is accused of a sexual offense against another person, reputation or opinion evidence of the past sexual behavior of an alleged victim of such sexual offense is not admissible." *Id.* Rule 412(b)(1) provides an exception if the evidence, other than reputation or opinion, is "[a]dmitted in accordance with subdivisions (c)(1) and (c)(2) hereof and is constitutionally required to be admitted[.]" Rule 412(c)(1) requires the defendant to

> make a written motion to offer such evidence not later than fifteen days before the date on which the trial in which such evidence is to be offered is scheduled to begin, except that the court may allow the motion to be made at a later date, including during trial, if the court determines either that the evidence is newly discovered and could not have been obtained earlier through the exercise of due diligence or that the issue to which such evidence relates has newly arisen in the case.

The motion must be served on all parties and the alleged victim. *Id.* Rule 412(c)(2) requires the motion to be accompanied by a written offer of proof.

¶104. A hearing was held on the State's motion in limine to exclude the evidence, at which Roberson expressed his objection. After discussion, the trial court directed Roberson to comply with Rule 412 by filing a motion under Rule 412(c)(1) no later than fifteen days prior to trial. The trial court specifically stated that if Roberson failed to do so, evidence of the victims' sexual orientation would be excluded, as it had not been shown the evidence was relevant to the case. Roberson failed to comply with Rule 412, as directed, and the trial court

47

excluded the testimony.

¶105. Nonetheless, Roberson now argues he had a constitutional right under the Confrontation and Compulsory Process Clauses to present evidence of the victims' bias to the jury. He cites to Rule 412(b)(1), which provides an exception for evidence of past sexual behavior that is "constitutionally required to be admitted." Roberson reasons that because Mississippi Rule of Evidence 616 allows evidence of bias to attack the credibility of a witness, Rule 412 must give way to his right to demonstrate bias.

¶106. Roberson asserts that his defense would have been that the victims made false accusations because he offended their homosexual lifestyle. While evidence of the victims' sexual orientation was not allowed, testimony was presented that S.E. took Roberson's speech as an attack on her lifestyle. When questioned about the speech, S.E. testified: "I got upset because I took what he was saying as he was telling us that the way he lived that he deserved to die, and I don't think anybody deserves to die." S.E. denied she sought revenge for his comments, but her testimony was contradicted by Roberson's witnesses.

¶107. Cooper, Roberson's daughter, testified that when Roberson made the speech, he referenced a sign hanging in his office that said, "You can't predict your future. You can decide your habits and they predict your future." Cooper testified that after the speech, S.E. was mad because she took Roberson's comments to mean that the student deserved to die. Cooper testified that S.E. then indicated that she did not know how, but that she "would get" Roberson.

¶108. Another student and softball player, H.H., testified that S.E. interpreted Roberson's

48

speech as being directed toward her and her lifestyle. H.H. testified that S.E. was mad and stated "that she was going to get him and that she wasn't going to play good" at the upcoming softball game. H.H. further testified that while S.E.'s father was talking to the principal on Monday morning, S.E. met with some of the players in a classroom and told them "that her dad was up there and that she might need [them] to have her back, but she wasn't going to let him get away with what he said." M.M., another student and softball player, also testified that S.E. thought Roberson's speech was aimed at her. M.M. testified that during break the following Monday, S.E. approached her and told her she needed M.M. "to have [her] back if this gets ugly."

¶109. We cannot find Roberson was prohibited from presenting his theory of defense—that S.E. was out to get him because of comments he made during the pregame speech. This theory was clearly presented to the jury. Roberson has not shown how the victims' sexual orientation was relevant or necessary. While Roberson could have expanded on this issue by filing a motion under Rule 412, he declined to do so. This issue is without merit.

### 2. Victim's Prior Sexual Abuse

¶110. Roberson also argues the trial court erroneously excluded testimony that S.E. chose to move to Clarkdale to escape her stepfather, who had molested her. This was testified to by Cooper, Roberson's daughter. The State objected to relevancy, and the objection was sustained. Roberson argues the testimony was relevant to impeach S.E.'s testimony that she had come to Clarkdale because she was recruited to play softball. Roberson claims that the jury could have inferred that he had recruited S.E. so he could sexually exploit her.

49

¶111. The trial court's decision to exclude evidence is reviewed for abuse of discretion. *Gore*, 37 So. 3d at 1183 (¶13). Roberson has not shown how hearsay testimony that S.E. was allegedly sexually abused by her stepfather was relevant. "Evidence which is not relevant is not admissible." M.R.E. 402. It was not suggested that S.E. was recruited to the school by Roberson so he could sexually abuse her. This issue is without merit.

## IX. Weight and Sufficiency of the Evidence—Count VIII

¶112. Roberson argues the evidence was insufficient to support the jury's verdict on Count VIII. Alternatively, he argues that the evidence was so weak and contradictory that he is entitled to a new trial.

¶113. Count VIII charged Roberson with gratifying his lust by rubbing the inside of S.E.'s thighs between June 1 and August 31, 2010. Section 97-5-23(2) states:

> Any person above the age of eighteen (18) years, who, for the purpose of gratifying his or her lust, or indulging his or her depraved licentious sexual desires, shall handle, touch or rub with hands or any part of his or her body or any member thereof, any child younger than himself or herself and under the age of eighteen (18) years who is not such person's spouse, with or without the child's consent, when the person occupies a position of trust or authority over the child shall be guilty of a felony . . . . A person in a position of trust or authority over a child includes . . . a child's teacher . . . or coach.

¶114. When reviewing the legal sufficiency of the evidence, "[t]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005). "Credible evidence consistent with guilt must be accepted as true." *Grossley v. State*, 127 So. 3d 1143, 1147 (¶10) (Miss. Ct. App. 2013). When a challenge is made to the weight of the evidence, we

50

view the evidence in the light most favorable to the verdict and "will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Bush*, 895 So. 2d at 843 (¶16).

¶115. Roberson argues that S.E.'s testimony regarding his touching her thighs was inconsistent and uncorroborated. S.E. testified that between June 1 and August 31, 2010, Roberson called her into his office and touched her outer and inner thigh, an inch and a half from her crotch. During cross-examination, she admitted that coaches sometimes touch or massage players to resolve injuries, and it was possible she could have misunderstood what Roberson was doing. However, on redirect, she clarified she had no injury in that area, and he had no reason to touch her there.

¶116. Viewing the evidence in the light most favorable to the State, we find the evidence was sufficient to sustain the conviction. Based on S.E.'s testimony, a rationale jury could have found Roberson guilty beyond a reasonable doubt. As to the weight of the evidence, any conflicts in the testimony are resolved by the jury. *Sims v. State*, 127 So. 3d 307, 311 (¶14) (Miss. Ct. App. 2013). Viewing the evidence in the light most favorable to the verdict, we cannot find the weight of the evidence was so contrary to the verdict that to allow it to stand would sanction an unconscionable injustice. This issue is without merit.

### X. Cumulative Error

¶117. Although not raised as a separate issue on appeal, Roberson asserts in conclusion that cumulative errors resulted in the denial of a fair trial. The cumulative-error doctrine states "that individual errors, which are not reversible in themselves, may combine with other errors

51

to make up reversible error, where the cumulative effect of all errors deprives the defendant of a fundamentally fair trial." *Ross v. State*, 954 So. 2d 968, 1018 (¶138) (Miss. 2007).

¶118. We have addressed three potential errors. First, we found that the testimony of A.M.'s pregnancy and adoption was irrelevant and should have been excluded, had Roberson made that specific objection in a timely fashion. He did not. Second, we found error in the admission of S.W.'s testimony that after Roberson's pregame speech, which Roberson argued motivated S.E. to fabricate the allegations against him, S.E. confided in her that Roberson had inappropriately touched her. We found the error in the admission of this testimony was harmless, given the weight of the evidence against Roberson and the fact that S.W.'s testimony was cumulative of S.E.'s testimony. Third, we found harmless error as to S.W.'s testimony that she believed S.E. was "honest and truthful" when she stated that Roberson had touched her inappropriately. We cannot find these instances combine to form reversible error as to Roberson's convictions. "[I]f there are no individual errors, there can be no cumulative error that warrants reversal." *Harding v. State*, 17 So. 3d 1129, 1133 (¶13) (Miss. Ct. App. 2009). This issue is without merit.

¶119. **AFFIRMED.**

**LEE, C.J., ISHEE, CARLTON, FAIR AND GREENLEE, JJ., CONCUR. IRVING AND GRIFFIS, P.JJ., AND WILSON, J., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. WESTBROOKS, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**